The Illinois Central Railroad Company

*v.*

Joseph Hammer.

1. Negligence—*in respect to persons passing over depot grounds.* Railroad depot grounds and passenger houses are *quasi* public, and a person going to such houses and passing over such depot grounds in a proper manner, is not a trespasser, but where persons go upon or pass over the grounds connected with railroad depots, they are presumed to know that the place is

dangerous, and hence are required to use care and prudence commensurate with the known danger of the place.

2. On the other hand, the servants of a railroad company, knowing the enhanced danger at depot grounds on account of persons constantly passing and repassing, are required to exercise a greater degree of caution and prudence for the preservation of life and limb, than at other places where persons have no right to be and the employees of the company have no right to expect to find them.

3. It is negligence for a person to travel on the track of a railroad at its depot grounds, where all must know that cars are constantly passing, and engines switching cars, and it is also negligence on the part of the company to have flying switches passing on a track without an engine attached, or a bell ringing, or a whistle sounding; and where both parties are at fault in these respects, it is for the jury to determine, from all the circumstances, whether the negligence of the plaintiff is slight, and that of the defendant gross, and if it is not, the plaintiff can not recover.

4. COMPARATIVE NEGLIGENCE. A plaintiff, free from all negligence, may recover from a defendant who has failed to use such care as ordinarily prudent men generally employ; or a plaintiff who is even guilty of slight negligence, may recover of a defendant who has been grossly negligent, or whose conduct has been wanton or willful.

5. INSTRUCTIONS—*should be plain and explicit.* In a case where there is doubt in regard to an important question, instructions should be plain and explicit, free from all doubt, and announce legal principles, so that there shall be no question as to what the law is.

6. PUNITIVE DAMAGES—*private corporations not liable to, for mere negligence of servants.* A private corporation can not be liable to punitive damages merely for gross negligence of its servants. If a company employs incompetent, drunken or reckless servants, knowing them to be such, or, having employed them without such knowledge, retains them after learning the fact, or after full opportunity to learn it, the company would be liable to punitive damages; or if the servants of a company, whilst engaged in its business, should wilfully or wantonly produce injury to others, the company would be liable to such damages.

APPEAL from the Circuit Court of Effingham county; the Hon. JAMES C. ALLEN, Judge, presiding.

Mr. GEORGE W. WALL, for the appellant.

Messrs. GILMORE & WHITE, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It appears that the place where this accident occurred was at the depot of appellant, in the city of Champaign; that the depot and grounds of the company are near the center of the city, and lie between Jefferson street on the north and Fayette avenue on the south, and the side track extending still further south. It is an open, uninclosed space, over which there seems to be much travel in transacting business with the company, and in passing from one part of the city to another. Situated as it is, it could not be legally fenced or otherwise inclosed. Railroad companies are only required to fence their tracks at such places as the public have no right to travel, or their stock to run.

Depot grounds and passenger houses are not strictly private property. They are places where persons may resort without permission, for the purpose of transacting business with the company, or with the employees of the company, or for the purpose of meeting friends or others arriving on trains, or to see others depart, and to pass over the same in going from one part of the city to another. Such grounds are made *quasi* public, by the general use to which they are appropriated. In populous cities, such grounds, from necessity, must be kept open to public use to a limited extent. Where railroad tracks run in the center of streets, it would be a novel doctrine to hold that the public had no right to their use, and that all persons traveling along or across the track were trespassers. When a railroad company acquires its right of way, or grounds in a city, town or public thoroughfare, it is subject to the right of the public to use the same in a reasonable and proper manner. These companies can only acquire rights of any kind on or over public thoroughfares on these terms. Their rights are not paramount to those of the public. They are equal within their scope, but not superior. When they permit the people to pass over their grounds, and invite the public to transact business with them on these grounds, they

thereby tacitly license persons to come upon and pass over them, and persons do not become trespassers by doing so in a proper manner. But it is otherwise with their right of way and ground outside of and away from their depot grounds, and beyond the limits of cities, towns, villages and their depot grounds. In such places, the people or individuals have no right to travel. The people are not invited to come there, nor have they any right to go on their tracks or right of way at such places. But where persons go upon or pass over the grounds connected with their depots, they are presumed to know that the place is dangerous, and hence are required to use care and prudence commensurate with the known dangers of the place. They have no right to be reckless, and to omit the use of care. On the other hand, the servants of the company knowing that it is a place where persons are constantly passing, their duty to exercise caution and prudence is also enhanced. In such places, they must use more effort and precaution for the preservation of life and limb than at places where persons have no right to be, and the employees have no right to expect to find them. Whilst the great commercial and business interests of the country demand their protection, still the lives and personal safety of persons are paramount. All other considerations must yield to this, the first and greatest and most important of all rights for which governments are organized and laws enacted.

Appellee was not, therefore, a trespasser, by being in the place where he was when he received the injury. But, notwithstanding this, he was required, being, as he was, in a known place of peril, to use a higher degree of care than if he had been in a place of supposed safety. There would seem to be no doubt that it is negligence for a person, in such a place, to travel on a track of a railroad, where all must know that cars are constantly passing, and engines switching cars, and where a person is necessarily liable to be run over and killed, or greatly injured.

On the other hand, all know that a flying switch, passing on a track without an engine attached, or a bell ringing, or a

whistle sounding, is and must, from the very nature of things, be more perilous to life than a switch with an engine attached, with the usual signals being sounded. The object of having a bell rung or a whistle sounded at road crossings and places where there is danger of collisions, is wholly defeated by the use of this mode of switching, and, when employed, it necessarily implies negligence on the part of the company.

Where, as in this case, both parties are at fault, it is for the jury, under proper instructions, to say, from all the circumstances appearing in evidence, whether the negligence of plaintiff is slight, and that of defendant is gross. If not, then such a plaintiff can not recover.

The rule announced in the English decisions, and of the courts of some of the States of the Union, is, that a plaintiff must be free from all contributory negligence, but, even under that rule, the courts frequently hold that a want of caution is not contributory, especially where the conduct of a defendant is grossly negligent. We may have slightly modified the rule, but we have never intended to announce, as a rule, that the mere preponderance of negligence entitles a plaintiff to recover.

The rule on this subject, it may be, has not at all times been accurately stated by this court. By inadvertence, it has been loosely and indefinitely stated in some of the cases, but what the court has held, and still holds, is, that a plaintiff free from all negligence may recover from a defendant who has failed to use such care as ordinarily prudent men generally employ; or, a plaintiff who is even guilty of slight negligence may recover of a defendant who has been grossly negligent, or whose conduct has been wanton or wilful. Hence the doctrine of comparative negligence. It would therefore be error for the court, in a case where it is claimed that the negligence of the defendant is gross, to instruct that the plaintiff must have been entirely free from negligence, as, in such a case, he may recover, although he has been guilty of negligence, if it is slight, and that of the defendant gross. It is equally inaccurate for the court to instruct the jury that the plaintiff may recover if the negligence of the defendant was greater than

that of plaintiff. The rule, as here stated, is the doctrine of this court, and to it we have been long committed, and to it we shall adhere.

Was the rule violated by appellee's instructions? It manifestly was. In a number of his instructions, the jury are told that he may recover if his negligence was slight, as compared with that of appellant. As we have seen, they should have required the jury to find, when compared, that appellee's was slight, and appellant's gross. Both of these conditions must exist, when a plaintiff is guilty of negligence, before he can recover. His may have been slight, as compared with that of appellant, and its not gross. Even if the language of the instructions can be, by ingenuity and the skill of scholarship, construed to mean that his must be slight, and its gross, it is not plain and obvious. On the contrary, it strikes us that such is not its apparent meaning. In a case where there is doubt in regard to an important question, instructions should be plain and explicit, free from all doubt, and announce legal principles so as there shall be no question as to what the law is on the subject.

Appellee's ninth instruction is not fair, and was well calculated to mislead. It selects but a few of many facts, and presents them prominently to the jury, as though they controlled the case. It leaves out the acts of appellee, and is one-sided, and does not present the case fairly. It seems to assume that the brakeman made no effort to prevent the train from running over appellee. It impliedly assumes that his efforts would have been availing, when it was for the jury to find whether they would or not, as the parties were then situated. If it was certain that the brakeman could not stop the train or slacken its speed before it struck appellee, why attempt to apply the brakes? Again, he did try to avoid the collision, if the evidence can be credited, by shouting to appellee to get off the track. This instruction should not have been given, and we think it may have misled the jury. All of appellee's instructions, on being read, seem to imply that the plaintiff was entitled to recover.

The facts they contain are only limited by the expression, "if proved," so placed as to attract, at most, but slight attention from persons who are not in the habit of examining language critically. They are skillfully drawn to make an impression on the mind that a critical examination may not warrant.

The eighth of appellee's instructions informs the jury that, for gross negligence of appellant, they would be at liberty to give punitive damages, as an example to others. This does not announce the law correctly. A private corporation can not be liable to punitive damages merely for gross negligence of its servants. If the company employs incompetent, drunken or reckless servants, knowing them to be such, or, having employed them without such knowledge, retains them after learning the fact, or after full opportunity to learn it, the company would no doubt be liable. Or if its servants, whilst in the employment of the company, and engaged in carrying on the business of the company, should wilfully or wantonly produce injury to others, then the company would no doubt be liable to such damages. With its servants, a mere omission of duty, although grossly negligent, should not be sufficient, but some intention to inflict the injury, or a reckless, wanton disregard for the safety of others, should appear, to warrant punitive damages. The instruction was therefore wrong, and should have been refused.

The instructions given for appellant, as modified, wholly ignored the rule of comparative negligence. As we understand them, more than one informs the jury that, although plaintiff may have been guilty of gross negligence, he might still recover if the defendant was guilty of greater negligence. We are unable to imagine a case in which a plaintiff, guilty of gross negligence, could recover. The court should, if not accurate, have refused appellant's instructions, or modified them so as to have stated the law correctly. When modified, these instructions were as well calculated to prevent the jury from fairly considering the question of comparative negligence, as

had the error been in appellee's instructions. These instructions were calculated to and may have misled the jury.

For the errors indicated, the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*