## Illinois Central R. R. Co. v. Beard.

1. *Railroads—Public Crossings.*—Where a railroad constructed steps at the ends of its freight house platform, which was elevated three or four feet from the level of the ground, these steps being essential to the use of the freight house by its employes and the public, with whom it transacted business there, and being connected with no street, sidewalk, or other public way, the fact alone that the public used such steps in going to and from the freight and passenger depot, or, for convenience, used them to shorten the distance in going to and from different portions of the town, did not make them a part of a public crossing.

2. *Negligence—Walking upon a Railroad Track.*—It is negligence for a person to walk upon a railroad track, whether laid in a street or upon an open field, and he who deliberately does so, will be presumed to assume the risk of the perils he may encounter.

3. *Negligence—Knowledge of the Use of the Track by Person Passing Along or Across it.*—The fact that many persons use a railroad track in passing along or across it with the knowledge of the company, but without the legal right to do so, may have an important bearing upon the question as to the correctness of the act of the railroad in the operation of its trains resulting in an injury; in this, such an act may be mere negligence without such knowledge, for which there could be no recovery; but with such knowledge, the same act may be so grossly negligent as to evince wantonness indicating an utter disregard for life.

4. *Care and Negligence Relative Terms.*—Care and negligence are relative terms, depending largely upon known conditions; as, to run a train at a high rate of speed where it is known that persons are in the habit of passing along the track, or crossing it, although without legal right, may be wanton, for which wantonness, resulting in an injury, there could be a recovery, while, if run at the same rate of speed, without such conditions being known, and an injury occurred, there would be no liability.

5. *Gross Negligence—Not in Law an Intentional Mischief.*—Gross negligence, of itself, is not, in law, a defined and intentional mischief, although it may be cogent evidence of such fact. The term is not one which, grammatically at least, and apparently not in law, though frequently so applied, is a subject of comparison.

6. *Contributory Negligence as a Defense.*—Contributory negligence, such as that of a trespasser upon a railroad track, can not be relied upon as a defense, in any case where the action of the defendant is wanton, willful or reckless, and the injury ensues as a result. The comparison of negligence in such cases, under the doctrine of contributory negligence, must be understood to apply to the care required, or to the law of relation as to reciprocal duties, after discovery of the danger in which a party is, or to the recklessness or wantonness of the servants of the defendant in failing to make such discovery, and avert the calamity.

7. *Recklessness—Questions of—How Considered.*—A question of reck-
lessness must be considered with reference to the specific fact and con-
ditions as they existed at the time of the injury.  It is not necessary,
or even proper, to consider what might have happened to some other
person at some other place on the track, by operating a car as was done
at the time in question.

8. *Comparative Negligence—Application.*—The law of comparative
negligence has no application unless the person injured was, at the time,
in the exercise of ordinary care.  Where the person voluntarily and
unnecessarily placed himself in a position well known to be a place of dan-
ger and is injured, there can be no recovery for even gross negligence on
the part of the defendant, his act not being willful or wanton.

Memorandum.—Action for personal injuries.  Appeal from a judg-
ment rendered by the Circuit Court of Union County; the Hon. JOSEPH
B. ROBARTS, Circuit Judge, presiding.  Heard in this court at the
August term, A. D. 1892.  Opinion filed September 23, 1893.

### STATEMENT OF THE FACTS BY THE COURT.

Appellee recovered a judgment in the court below for a
personal injury alleged to have been caused by the negli-
gence of the appellant.

The declaration contains two counts, the first alleging
that appellee was injured while he was attempting to pass
over appellant's road at a public foot-crossing, by the neg-
ligence of appellant's servants in the operation of its cars;
the second count alleging that the plaintiff on, to wit, the
11th day of October, A. D. 1891, was then and there cross-
ing a certain other railroad of the defendant, then and there
in the county of Union, State of Illinois, at, to wit, over
and across a certain public foot-crossing leading from the
passenger depot of the defendant in the city of Anna, in
said county, over and across the said railroad of the defend-
ant, to and toward the freight house of the defendant in
the city aforesaid, said public foot-way leading thence to,
over and across West Railroad street of said city, and the
defendant was then and there possessed of a certain loco-
motive engine with a certain train of cars then and thereto
attached, which said locomotive engine and train were then
and there under the care and management of divers then
servants of the defendant, who were then and there making

a running switch with the said engine and cars, and who had then and there driven the said cars upon and along the said railroad, unattended by said engine, or by said servants, from a great distance south of said foot-crossing, to wit, a distance of 200 feet, near and toward the public foot-crossing aforesaid, with great impetus, and at a great speed, to wit, a speed of twenty miles per hour; and while the plaintiff was then and there, and at said aforementioned point attempting to cross said railroad at said crossing, the defendant then and there by its said servants, although the said servants then and there knew that persons were in the habit of passing across the said railroad over and upon the said foot-crossing leading from the passenger depot of the defendant to the freight house of the defendant as aforesaid, wantonly, recklessly and with gross negligence drove said cars unattended by said engine or servants, and without any signal whatever, at a very great rate of speed along and upon said railroad of the defendant, and toward the plaintiff, and toward and across said foot-crossing, and without giving adequate, sufficient, or timely warning to the plaintiff, in order that he, the plaintiff, might avoid being injured by the approach of said cars, so that, and by and through the gross and wanton negligence and improper conduct of the defendant, by its said servants, in that behalf, the said cars then and there ran against and over and struck with great force and violence upon and against the plaintiff, and the plaintiff was thereby then and there greatly bruised, hurt and wounded.

The appellee describes surroundings and circumstances leading up to and connected with the accident substantially as follows:

"I live in Anna. Am thirty-six years old. Have been gardening and buying. Last fall I was buying some. I am acquainted with the passenger and freight house of defendant at Anna. My occupation calls me there, in buying and shipping. The passenger depot is just a little bit opposite the freight house. The telegraph office extends past the end of freight house; formerly there was a platform there.

The platform has been around the freight depot ever since I have been there. The passenger depot is on east side of tracks, and the freight house on the opposite side. The track runs north and south. The platform around the freight house next to the tracks is four or five feet high. On the way to the passenger depot from the freight house platform you go down steps. The steps are west of the freight house and lead to the post office. The walk there leads to it. It crosses Railroad street, and is of gravel. It has been there ever since I have been there. There is no fence west of the freight house nor south of it. There is no way to go from the freight house to the passenger depot besides the steps except to go by the express office and go across, 200 or 300 feet south. The crossing from the freight house to the passenger depot is used all the time. It has been in use ever since I have been there, and is used by everybody. The express office is north from the postoffice 200 or 300 feet. There are three tracks between the passenger depot and the freight house. The main track is next to the passenger depot, the next track on the west is called the pass track, and the next is called the house track. The house track is eight feet four inches from the center of the rail of the pass track. I was injured at this place on the 10th of October, 1891. The time of day was about 7:30. I came to that locality straight from Finch's livery stable, to see if there was a message for me at the telegraph office. I got a message and went under the signal light over the telegraph office to read it. The telegraph office is at the south end of depot. I then started to cross. There was a freight train on the pass track. I looked and there was no engine to it, and I got up on a coal car and walked across to the other side and was about jumping off, when Worthington asked me to take his valise and monkey-wrench. I got his valise and monkey-wrench and walked on across and stepped off. As I stepped off I stumbled. My foot caught on some cinders and I stumbled and fell. I fell right directly across the rail, right west. I made an attempt to get up in this position facing the west, kind of angling in this shape. The

corner of the car struck me and threw me around on my back, and that threw this right shoulder up against the rail, and the flange of the wheel ( the rail is level with the ground) cut this arm off, or mashed it so it had to be cut off. When I stepped up the freight train was on the pass track—the middle track. When the freight train came in I was in the telegraph office. It was going south. When I stepped on the car the engine was below the crossing, not attached to the train. At that time the freight train was the only train I saw in the depot yard. There was nothing across the main track, and I saw no cars on the house track. If there had been any cars near where I was I could have seen them. Just prior to the time I stepped or jumped off the car the engine was somewhere below the freight depot—could hear it there. I could not say how far below. The switch that connects the middle or pass track with the house track is just below the public crossing. This switch is about 150 or 100 yards from the point where I was attempting to cross. I never saw any cars only the one I was standing on. I looked up and down the road as far as I could see, to ascertain the presence of cars. I could not see very far down the road, because it was dark. At the time I jumped there was no cars on the house track that I could see. Standing on the coal car I could see down as far as the south end of the depot, and I guess that is fifty feet. It was so dark I could not see to read anything without getting in the light. Standing on the car where I was standing I could probably see a freight car fifty feet. There was no cars on the house track to obstruct my view for a distance of fifty feet south. The cars that struck me were coming from the south. There were two of them. They were coming at pretty rapid speed. Could not say how fast. I never saw them till they struck me in the chest. I was not down more than a second. Just as soon as I could spring up I did so. Those cars went up about fifty feet to the lime house and stopped. I heard them strike. They struck before Worthington got me on my feet. They struck awful hard. No engine with them. There was nobody on the cars that I could see. There was

no light. If anybody was there I did not see their light. I did not receive any warning of the approach of the car. I was in a rising attitude with my feet to the west. The train knocked me north, and I fell on my back. My right arm was under the car somewhere. My arm was never across the rail, but was over the rail. When I started across the track I was going to the postoffice and home. I could have gone to the public crossing. I could have gone to the post-office that way and wasted an hour or two. There is plank at the public crossing on both sides and a plank walk that led up to the corner and connected with another walk that led to the postoffice. I don't know that there was anything that prevented me from going that way. I suppose the place where I attempted to cross was the railroad company's right of way. Those tracks are called switch tracks. At the time of the accident I knew that cars were switched on both those tracks at all times in the day and night. The train that was on the pass track had not been there very long. I think it came while I was in the telegraph office."

The witness Worthington, to whom appellee refers as being with him, testifies substantially as follows:

"When the plaintiff climbed over the car I was standing somewhere about the center of the main track, or between the two tracks. I was four or five feet from the plaintiff. He got up between the two cars and started over. He got hold of the handle there, and got up and started across. There is a handle on the side of the coal car and a step there. The two cars were loaded with coal. He stood up straight. I could not see him jump down. I saw him as he went over the side. I don't know whether he fell or jumped. When he fell I was trying to get up on the other side of the car. I got on the car the same way he did only I did not fall. I do not know Mr. George was there before I was. There is a distance of about three feet between the main part of a coal car and the couplings. I could not tell whether plaintiff jumped or fell. I saw the cars as they passed by. They passed just about the time I got upon the little platform. I think there were two cars. The

time of night was between half past seven and eight o'clock; guess that was about two hours after sundown. The daylight was all gone. It was a light night. I guess there was nothing to prevent me from seeing the cars if I had looked. If I could see a man fifty feet I could see a car a great deal farther; suppose you could see a car 200 feet. There was a light hanging in the neighborhood of the public crossing, and two lights on the platform. I suppose you could see a car 200 feet distant in the direction of the public crossing at that time without any trouble. That is my judgment."

There was evidence on the part of the appellant that appellee had been drinking, and at the time was somewhat intoxicated. The evidence on the part of appellee was that he had been drinking but was not intoxicated. It does not appear that he was seriously affected at the time by drink. There was evidence, also, on the part of appellant to show that the steps leading from the freight platform on the east and west were made and used for the convenience of the employes, and others having business with the company. The buildings were in the center of a block of ground, or at least the public crossings were some distance away from the buildings, and the tracks were not in a street. The evidence of the brakeman was, that the car which struck appellee, as claimed, was in charge of one of them who was on top of the car, and the evidence of all the men in charge of the train was that "kicking" the cars was the ordinary and usual way at that place of setting them on the "house switch."

Upon the close of the evidence the defendant asked the court to give the jury the following instructions, to wit:

The court instructs the jury that there is not sufficient evidence before them to warrant a verdict for the plaintiff, and they should find the defendant not guilty.

Which instruction the court refused to give.

And, thereupon, the court gave to the jury on behalf of the plaintiff, the following instructions, to wit:

1. If the jury believe from the preponderance of the

evidence the defendant company held forth invitation, inducement or allurement to the public generally, to cross and re-cross its right of way at the point where the accident is alleged to have occurred, and it was so used by the public generally, and that the company knew this, then and in that event, a person so crossing at said point, would not be a trespasser on the defendant's right of way.

2.  And, notwithstanding you may believe from the evidence that the plaintiff was a trespasser on defendant's right of way, and that his own want of ordinary care exposed him to the risk of injury, yet the defendant might not with impunity wantonly or recklessly injure him. And if you believe from the preponderance of the evidence that the defendant's servants were at the time, and just before the time of the alleged injury, in the charge and management of the cars in question, and you further find from the evidence that said servants were aware of the dangerous position of the plaintiff in time to have averted the injury by the use of ordinary care, or that said servant could have been aware of plaintiff's danger by the use of ordinary care in time to have averted the injury, and failed to use ordinary care to avert the danger, but wantonly and willfully permitted the car to strike and injure plaintiff in manner charged in the declaration, then you should find the defendant guilty, and assess plaintiff's damages at whatever sum you may think him entitled to, under the evidence, not exceeding $6,000.

3.  The court instructs the jury, that while a person is bound to use reasonable care to avoid injury, yet he is not held to the highest degree of care and prudence of which the human mind is capable, and to authorize a recovery for injury, he need not be wholly free from negligence, provided his negligence is but slight, and the other party be guilty of gross negligence, as defined in these instructions. And in this case, although the jury may believe from the evidence that the plaintiff was guilty of some slight negligence, yet if the jury further believe from the evidence that the plaintiff's negligence was but slight, and that the defendant's servants were guilty of gross negligence, as

explained in these instructions, and that the injuries complained of were caused thereby, then the plaintiff is entitled to recover.

APPELLANT'S BRIEF, GREEN & GILBERT, ATTORNEYS.

Where a person is traveling upon a railroad company's right of way, not for any purpose of business connected with the railroad, but for his own convenience as a footway, there is nothing to exempt him from the character of a trespasser further than the implied assent of the company, arising from a non-interference with a previous like practice by individuals; but because the railroad company did not see fit to enforce its rights and keep people off its premises, no right of way is thereby acquired. A railroad company is not bound to protect or to provide safeguards for persons so using its grounds for their own convenience. In such case a person must use extraordinary care before he can complain of the negligence of the company. I. C. R. R. Co. v. Godfrey, 71 Ill. 500; Wharton on Negligence, Sec. 346; Cooley on Torts, p. 660; Thompson on Negligence, Vol. 1, p. 434; The Aurora Branch Railroad Co. v. Grimes, 13 Ill. 591; I. C. R. R. Co. v. Hetherington, 83 Ill. 510; I. C. R. R. Co. v. Hammer, 72 Ill. 350; Blanchard v. L. S. and M. S. R. R. Co., 126 Ill. 422; I. C. R. R. Co. v. Brookshire, 3 Ill. App. 231; Willard v. Swanson, 126 Ill. 385; Lake Shore and M. S. Ry. Co. v. Bodemer (Ill.), 29 N. E. Rep. 692.

APPELLEE'S BRIEF, KARRAKER & LINGLE, ATTORNEYS.

That making a running switch, or the "kicking in" process, which is the same thing as to effect and danger, at a speed of five miles an hour, in a populous city, constitutes a high degree of negligence, we cite I. C. R. R. Co. v. Baches, 55 Ill. 379; C. & A. R. R. Co. v. Garvey, 58 Ill. 83; C. & N. W. Ry. Co. v. Taylor, 69 Ill. 461.

We call the especial attention of the court to the case of I. & St. L. R. R. Co. v. Galbreath, 63 Ill. 439.

A railroad company is to be held to the exercise of a very high degree of care in operating its road through the public

streets of a city. C. B. & Q. R. R. Co. v. Stumps, 69 Ill. 409; Penn. Co. v. Hankey, 93 Ill. 580; L. S. & M. S. R. R. Co. v. Sunderland, 2 Brad. 307.

It is gross negligence for a railroad company to run its trains in the dark without a headlight. Burling v. I. C. R. R. Co., 85 Ill. 18.

The law of negligence is so well settled in this State by repeated rulings, that we can see no ground for dispute in an inquiry as to what it is. It is free from difficulty, as laid down in Willard v. Swansen, 126 Ill. 385, and in Lake Shore & M. S. Ry. Co. v. Bodemer, N. E. Reporter, Vol. 29, p. 692, cited by appellant. The last case we especially commend to the attention of the court. This case went to the jury upon the single count, charging such gross negligence as showed willfulness, and the plaintiff was considered a trespasser. The court quotes from Harlan v. Railway Co., 65 Mo. 22, where it is said: "In cases where plaintiff has been guilty of contributory negligence, the company is liable if, by the exercise of ordinary care, it could have prevented the accident. It is to be understood that it will be so liable, if, by the exercise of reasonable care, after a discovery by defendant of the danger in which the injured party stood, the accident could have been prevented, or if the company fail to discover the danger, through the recklessness or carelessness of its employes, when the exercise of ordinary care would have discovered the danger, and averted the calamity."

" Contributory negligence," the court further say, " such as that of a trespasser upon a railroad track, can not be relied on in any case where the action of the defendant is wanton, willful, or reckless in the premises, and injury ensues as the result."

" Although the plaintiff is guilty of negligence, he can recover if the defendant could have avoided committing the injury, by the exercise of ordinary care." Deer. Neg. Sec. 30.

In Railroad Co. v. Harman's Adm'r, 83 Va. 553, 8 S. E. Rep., the rule was recognized that a railroad company is

bound to keep a reasonable lookout for trespassers on its tracks, and to exercise such care as the circumstances require, to avoid injury to them.

OPINION OF THE COURT, SAMPLE, J.

Under the evidence in this case and the law as applicable thereto, there was no public crossing at the place alleged in both counts of the declaration. This claim is based wholly on the physical fact, so far as the appellant is concerned, that it constructed steps at the east and west ends or sides of its freight house platform, which platform was elevated three or four feet from the level of the ground. The steps were essential to the use of the freight house by its employes and the public, with whom there it transacted business. The steps connected with no street, sidewalk or public way. The fact alone that the public used such steps in going to and from the freight and passenger depot, or for convenience used them to shorten the distance in going to and fro between the different portions of the town, did not make them a part of a public crossing.

The fact that appellant had a station there, with freight and passenger depot buildings, was an invitation to that part of the public having dealings with it, to cross its tracks wherever necessary for the purpose of transacting such business; but this fact did not make its tracks public crossings, in any proper sense of that term. If so, then the appellant was in the wrong in allowing its cars, over which appellee had to climb, to stand upon such public crossing. No one would insist it did not have a perfect legal right to allow these cars to stand where appellee found them, and over which he climbed. That act is not alleged in the declaration nor claimed in the argument to have been negligent, or a violation of law, state or municipal. It would have had just as clear a legal right to have had other cars standing opposite, to the west, on the "house" track, as the place where appellee fell. Its right there, of the use and occupancy of that portion of the ground, was exclusive, not only as to the public generally, but to the appellee as well.

Therefore there could be no correlative rights of use as between appellee and appellant. Necessarily, then, at the time of the accident, the appellee having no business with the company, was on that track without legal right to its use, to the exclusion of the appellant, for a single moment of time. His relation, therefore, to the appellant at the time and place of the injury, must have been that designated in Blanchard v. L. S. & M .Ry. Co., 126 Ill., at p. 422, and other cases there cited.

The case of I. C. R. R. Co. v. Hammer, 72 Ill. 347, is cited by appellee's counsel as holding a contrary doctrine. The facts in that case are not stated so that the law there announced can be clearly applied to the facts in this case. In all that appears the person injured may have been at the place of the accident for the purpose of transacting business with the company, or where he had a right to be. While it is held in that case that the person injured was not a passenger, yet the law is declared to be, " notwithstanding this, he was required, being, as he was, in a known place of peril, to use a higher degree of care than if he had been in a place of supposed safety." If his rights at the place of the accident were correlative with the company's, though subordinate, as it is at public crossings, then, of course, the duty of care and watchfulness was, by the law, imposed on the company, and the doctrine of comparative negligence would apply.

This case, however, is cited with others in the case of C., B. & Q. R. R. Co. v. Olson, 12 Ill. App. p. 250, as sustaining the doctrine that " it is negligence for a person to walk upon the track of a railroad, whether laid in the street, or upon the open field, and he who deliberately does so, will be presumed to assume the risk of the perils he may encounter."

That law was quoted from the case of I. C. R. R. Co. v. Hall, 72 Ill. 225, decided at the same term as the Hammer case. In the latter case the proof was clear that the track had been in common use for pedestrians without complaint on the part of the company. The basis of the doctrine of the Hall case must be on the want of legal right to so use

the track and not in the mere fact that the person injured is walking along rather than across the track.

The fact that many persons use a track, either in passing along or across it, with the knowledge of the railroad company, without legal right, may have an important bearing on the question as to the character of the act of a railroad company in the operation of its trains resulting in an injury in this, that such an act might be mere negligence without such knowledge, for which there could be no recovery, but with such knowledge the same act might be so grossly negligent as to evince wantonness, indicating an utter disregard for life. Care and negligence are relative terms, dependent largely as to degree upon known conditions. To run a train at a high rate of speed where it was known persons were so using the track, although without legal right, might be wanton, for which wantonness, resulting in an injury, there could be a recovery: L. S. & M. Ry. Co. v. Bodemer, 139 Ill. 596; while if run at the same rate of speed, without such conditions being known, and an accident to a person occurred, there would be no liability.

Having determined that there was no public crossing at the place where the accident happened and that the rights there of the respective parties were not correlative but exclusive on the part of the appellant, the question left for determination is: Did the act of the servants of appellant under the conditions there existing in kicking back the car on the "house" track, which it is alleged struck the appellee, exhibit such a degree of recklessness as to indicate an utter disregard of consequence, or an intentional wrong?

It is said that "gross negligence" of itself, is not in law "a designed and intentional mischief, although it may be cogent evidence of such fact." J. S. E. Ry. Co. v. Southworth, 135 Ill. 255.

"Gross negligence" is not a term, which, grammatically at least, and apparently not in law, though frequently so applied, is the subject of comparison, as it would be absurd to say "*gross* gross, *grosser* gross and *grossest* gross." C. B. & Q. R. R. Co. v. Johnson, Adm'r, 103 Ill. 522.

And yet it is said, in the case of L. S. & M. A. Ry. Co. v. Bodemer, 139 Ill. 606, quoting from 2 Thompson on Negligence, 1264, Sec. 53: "What degree of *negligence* the law considers equivalent to a willful or wanton act is as hard to define as negligence itself, and in the nature of things, is so dependent on the particular circumstances of each case as not to be susceptible of a general statement." It is defined by our Supreme Court in I. C. R. R. v. Godfrey, 71 Ill. 500, to be "*such* gross negligence as evidences willfulness." It is said in the Bodemer case, *supra*, to mean "*such* a gross want of care and regard for the rights of others as to justify the presumption of willfulness or wantonness. It is such gross negligence as to imply a disregard of consequences, or a willingness to inflict injury."

"Contributory negligence, such as that of a trespasser upon a railroad track, can not be relied on as a defense, in any case where the action of the defendant is wanton, willful or reckless in the premises, and injury ensues as a result." Bodemer case, *supra*, 607.

It is there further in substance said that the comparison of negligence, *in such case*, on the doctrine of contributory negligence, *must be understood*, when used in reference thereto, to apply to the care required, or the law of relation as to reciprocal duties, after a discovery by defendant of the danger in which the injured party stood, or to the *recklessness* and wantonness of the servants of the defendant in *failing* to make *such* discovery and avert the calamity.

Applying these rules of law to the facts in this case for the purpose of determining the question now under consideration, the servants of appellant were not primarily required to use care to discover the appellee at a place on the track where he had no legal right to be, unless they knew or had reasonable grounds to believe that he or some one would be there and in a situation or condition of peril; and unless they so knew, the appellant is not liable, unless the appellee was discovered by the servants of appellant to be at such place and in peril of injury and they thereafter did not use care—that is, make all reasonable efforts—to avoid injuring him.

There is no proof that appellant's servants saw the appellee on or near the track.  The proof is clear that a brakeman rode the car back to the place where it was to be left and he did not see appellee.  The appellee declared no one was on the car, but how could he be expected to see a man on the car when he did not, as he says, see the car itself.

Worthington declares he saw no one on the car, but there is no proof that he looked to see.  There were no circumstances calling his attention to that fact.

Others who testified on the subject for the appellee were some distance away and do not pretend to any knowledge on the subject that can be considered as of any weight as evidence.  The brakeman who rode the car and the man in charge of the bills of freight testify positively on the subject.  Besides, all the circumstances corroborate them.  Even if no one rode on the car the facts do not make such a case of wantonness or recklessness as to indicate a disposition to willfully inflict an injury.  The proof is uncontradicted that kicking the car on the side track was the customary way, which the appellee testified he well knew.  A part of the train was standing on the "pass" track, over which appellee climbed to reach the "house" track, where he was injured.  No one would expect, and the train men had no reasonable grounds to believe, that a person would climb over the cars to reach that track, and thus place himself in a position of peril.  Had he been seen on the coal car that was standing on the "pass" track, by the train men, they would have been under no obligation to have checked or stop the moving car.  They would have had a legal right to have assumed that he was of ordinary intelligence and caution, and would not voluntarily and knowingly expose his body to danger.  C., R. I. & P. R. R. Co. v. Austin, Adm'r, 69 Ill. 426; I. C. R. R. Co. v. Fulka, 9 Ill. App. 605.

This question of recklessness must be considered with reference to the specific facts and conditions as they then existed.  It is not necessary or even proper to consider what might have happened to some other person at some other place on the track, by operating the car as was done in this case.  The question is, so far as this appellee is con-

cerned, not that some one might have been attempting to cross the track from the west to the east, at a place where there were no cars standing on the "pass track," but could the trainmen reasonably anticipate that appellee or any other person would climb over the cars at that place for the purpose of crossing the track there. While there is proof that a good many people, as a matter of convenience, availed themselves of the steps of the freight house platform in passing to and fro, yet, there is no proof that they were in the habit of climbing over freight cars in order to do so. Conceding, then, that the moving of the car that is alleged to have struck appellee, by "kicking" it, was negligence, still it falls far short of that required to constitute wantonness on the part of the servants of appellant; unless their conduct was so reckless as to impart that character to the act, resulting in appellee's injury, there could in no event be a recovery in this case. That was essential to be established to relieve him of the obligation of care for his own safety; for under the doctrine of comparative negligence, slight negligence on his part is not inconsistent with the observation of ordinary care, which, when such rule is invoked and made the basis of an action, must be proven, in order to authorize a recovery. C. & A. R. R. Co. v. Gretzner, 46 Ill. 75–83; C., B. & Q. R. R. Co. v. Johnson, 103 Ill. 512.

In fact, the law of comparative negligence has no application, unless the person injured has used at least ordinary care. P. C. & St. L. Ry. Co. v. Goss, 13 Ill. App. 619.

From what has been heretofore said it is apparent that our conclusion is that the appellee did not exercise ordinary care for his own safety.

There was a light hanging near the public crossing, and two lights on the platform of the depot building, so that the moving car could have been seen some distance away. The appellee was in an elevated position on the coal car, with no obstruction to prevent him from seeing the car. He testifies that he knew that switching was done there by "kicking" the cars on the "house track" at all times, day and night, and that the engine was disconnected from the train, and was down by the switch ends at the south, evi-

dently engaged in that work. Knowing these facts, which fully apprised him of the danger, he hazarded the attempt to cross the "house" track, which was known to him to be the switch track, and in doing so, jumped down from the coal car, which was standing on the "pass" track, and fell, but says, "I was not down more than a second." As he attempted to arise, he claims the car struck him in the chest and knocked him down on his back.

By his own showing he must have jumped down from the coal car almost immediately in front of the moving car, although he could have seen the car and avoided the accident.

Where a person voluntarily and unnecessarily places himself in a position well known to be a place of danger, and is injured, there can be no recovery for even gross negligence on the part of the defendant, the act of the defendant not being willful or wanton. Abend v. T. H. & I. R. R. Co., 111 Ill. 202.

Instructions number one, two and three, given for the appellee, were not in harmony with the views herein expressed, upon which we do not deem it necessary to comment further, for the reason that if we are correct, there can be no recovery in this case, and therefore the case is reversed and not remanded.

Finding of facts: That appellee attempted to cross the track of appellant at a place that was not a public or private crossing, without using ordinary care on his part, to see an approaching car that was being at the time switched onto one of appellant's tracks by "kicking" the same, and giving it momentum in that manner, which car struck the plaintiff and injured him; that said car was at the time attended by a brakeman riding on top of the same, for the purpose of controlling and stopping it at the desired place on the switch track, and that the act of so operating such car, under the circumstances, was not so negligent as to manifest a reckless disregard of the rights or safety of the appellee.

The clerk will enter the foregoing in, and make the same a part of, the final order of the case.