## Chicago & E. I. R. R. Co. v. William H. Garner.

1. INSTRUCTIONS—*Where the Evidence is Conflicting.*—Where the evidence is conflicting on all the vital questions in the case, and raises a doubt as to whether there should be a recovery, the jury should be assisted in their investigation by clear, accurate and perspicuous instructions, to enable them to arrive at a just conclusion on the disputed facts.

2. SAME—*A General Rule.*—The general rule is, that if the instructions are objectionable, and their natural effect is to mislead the jury, where the facts are controverted, the verdict will be set aside, and the cause submitted to another jury, with proper instructions.

3. INSURANCE—*Waiver of Certain Proofs by Refusal to Pay.*—Where an accident insurance policy provides that the insured shall, in case of an accidental injury, furnish a certificate from his surgeon covering the period of his disability, showing that he was disabled, and that such disability was in consequence of the injury sustained by him, the presentation of such certificate is waived, by the company notifying the insured that it will not pay him anything on the policy, for reasons other than the failure to furnish such certificate.

4. ATTORNEYS—*Improper Remarks in Argument.*—The following remarks by counsel for plaintiff, to wit : " The plaintiff is entitled to twenty-five dollars a month for seven months. * * * For what reason will you refuse it ? Does the evidence show he is a fraud ? It does not. No one says so, except counsel for defendant, and he is hired up here to say that every man that comes before him is a fraud—that there must be fraud. Kill and cripple and ruin them, and send them to the poorhouse, for the county to keep them. And he comes into court and says they are a fraud. Well, I won't put that in. I withdraw the killing part. He is trying to cobweb things to go in, to trouble men, not to do justice, but to heap a wrong against a fellow-citizen in the interests of his clients, because, forsooth, they are rich and powerful, and can fight and pay "—were held, to be well calculated to arouse the passion and prejudice of, and wrongfully influence the jury against the defendant in a case where the evidence is conflicting and the case close.

Assumpsit, on an accident insurance policy. Trial in the Circuit Court of Vermilion County; on appeal from a justice of the peace; the Hon. FERDINAND BOOKWALTER, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the November term, 1898. Reversed and remanded. Opinion filed June 3, 1899.

H. M. STEELY, attorney for appellant; W. H. LYFORD, of counsel.

MABIN & CLARK, attorneys for appellee.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

On February 28, 1898, the appellee commenced this suit against the appellant before a justice of the peace in Vermilion county, and by appeal it was taken to the Circuit Court of that county, and tried by a jury, resulting in a verdict and judgment in favor of the appellee for $166.94. The appellant brings the case to this court by appeal, and urges us to reverse the judgment, on the grounds that the court admitted improper evidence against it; that the verdict is contrary to the law and the evidence; that the court improperly modified one of its instructions, and, as modified, gave it to the jury; and that counsel for the appellee, in his closing argument to the jury, made improper remarks.

The suit was on a demand for seven months' indemnity, commencing August 1, 1897, and ending February 28, 1898, under a contract of insurance consisting of an application made by the appellee to the appellant August 6, 1896, as follows :

" I hereby apply to the Chicago & Eastern Illinois Railroad Company for an accident insurance policy, and request said company to advance to me the premium herein, as herein specified.  *  *  *  I hereby authorize and direct the paymaster of said company to deduct from my pay each month, so long as I may remain in the service of said company,  *  *  *  one per cent of my usual monthly wages.  For the purpose of such insurance, I hereby agree that $50 shall be considered to be my usual monthly wages, and shall be the basis of computation for the premiums and benefits to be paid under this policy.

(Signed)  WILLIAM H. GARNER."

And a policy issued to him as follows :

" No. 8303.                                                    $50.00.

This is to certify that William H. Garner, employed by the Chicago & Eastern Illinois Railroad Company as fireman, residing at Danville, is insured against accident resulting in bodily injury or death.

By the terms of this insurance such insured will receive through the paymaster of the Chicago & Eastern Illinois Railroad Company, in case he shall sustain accidental injury at any time after the date hereof, and while he remains in the employ of said company, the following benefits:

In case of accidental injury not resulting in death, one-half of his usual wages during such time (not exceeding fifty weeks), as he shall be totally or necessarily disabled by reason of such injury; the total in no event to exceed the sum of $1,000. Such benefit shall not accrue, or be payable, except upon the presentation of certificate of attending surgeon as to consequent disability.

For the purpose of this insurance it is hereby agreed that $50 shall be considered to be the usual wages of said insured, and shall be the basis for the computation of premiums and benefits to be paid hereunder.

Such benefits shall not accrue except for accidental injury sustained by said insured while he is actually engaged in the service of said company.

Dated at Chicago this sixth day of August, 1896.

(Signed)   CHICAGO & EASTERN ILLINOIS RAILROAD COMPANY.

By C. W. HILLARD,
2d Vice-President and Treasurer."

The evidence shows that the appellee commenced work as a locomotive fireman for the appellant on August 6, 1896, and continued in such employment until July 21, 1897; that he made the foregoing application to the appellant and received from it the above policy sued on when he entered into such employment. On July 31, 1897, Dr. R. W. Gillett gave appellee a certificate, as follows:

"I hereby certify that W. H. Garner, fireman, has been under my care for injuries which were the result of an accident near Cayuga; that he has been totally disabled from his usual employment by reason of said injury from the 21st day of July, 1897, to the present time, and that such employe is not yet able to resume work.

(Signed)    R. W. GILLETT, M. D.
August 1, 1897.                    Surgeon at Danville."

Upon which the appellant paid him the sum of $8.06 as indemnity for disability in the month of July, 1897, under the provisions of the policy. Dr. Gillett refused to give appellee any further certificate, and on October 12, 1897,

H. F. Jones, superintendent of the insurance department, wrote to the appellee a letter, as follows :

" DEAR SIR : After a thorough investigation of your case, I beg to advise that I will have to decline to pay you any amount whatever on account of insurance.
(Signed) H. F. JONES."

The appellee testified that on July 21, 1897, he fell from a locomotive of the appellant, upon which he was then fireman, when it was pulling a freight train near Cayuga, Indiana, from which he lost consciousness until he was in the hospital at Danville, when he felt great pain all over, and since that time he has been unable to work, or even walk without the aid of crutches; that he had a talk with Mr. H. F. Jones, claim agent of the appellant, at Mrs. Baker's house, in Danville, on August 2, 1897, in which he said " I might go to Kentucky, where I formerly lived, if I desired to, and he would furnish me with a blank; and for me to be examined there · by a doctor and the doctor send in a report, and he would send my checks for insurance there as long as I stayed." I did so, and wrote Mr. Jones and got no answer. · 1 wrote to Mr. Broughton, superintendent or general manager of the appellant, and he replied September 20, 1897, as follows :

" I have your letter and have referred same to our claim agent;" and that on September 21, 1897, H. F. Jones, superintendent of insurance of the appellant, wrote me a letter from Chicago, Illinois, as follows :

" I have your letters in relation to insurance matter, and beg to advise that I wrote your doctor concerning your disability, and asked him to be kind enough to give me a complete reply. He has not done so, and you better see him and have him write me fully as to all I asked him. Upon receipt of his reply, I will take the matter up immediately." (Which letter was put in evidence.) He further testified that the appellant, each month while he worked for it, took one per cent out of his wages to pay for this insurance.

Dr. W. A. Cochran testified that he was the county physician of Vermilion county, lived at Danville, and had practiced medicine since 1873; knew the appellee and examined

him in January, 1898; found he had received an injury about the hips which affected the sciatic nerve; he had also received an injury to one of his shoulders, but it was not permanent; found considerable swelling about his left knee joint, which was an inch and a quarter larger around than the other; found some loss of sensation of the skin about the hip and left leg, with some loss of muscular power and traces of paralysis.

Dr. S. W. Jones testified that he was a physician and surgeon in practice for twenty-two years, and on May 27, 1898, he examined the appellee at the request of his attorneys; found some tenderness over the region of the fourth and fifth lumbar vertebrae and in the region of the sciatic nerve; found his left knee was an inch and a quarter larger in circumference than the other; his left leg was paralyzed and he did not have good use of it. I found no evidences of bruises or lacerations.

Dr. R. W. Gillett testified that he lived at Danville, Ill., was a regular graduate of medicine and surgery and had been in regular practice for twenty-seven or twenty-eight years; that he was called to see and treat appellee on July 21, 1897; first saw him at the depot in Danville, and then he was taken to St. Elizabeth's Hospital, where I took off all his clothing and made an examination of him all over, and frequently and very carefully examined him thereafter; I treated him some seventeen or eighteen days; he complained of pain in every part of his body, but I was unable to find any indication of or cause for it in the least. There were no bruises, abrasions, swellings, scratches or indications of injuries of any kind on any part of his person; he could use all his limbs, muscles, etci, and they acted normal. Saw him examined by Dr. H. W. Morehouse, medical superintendent of the Wabash Railroad Company, who made a very thorough examination of him at the hospital when naked; he used an æsthesiometer, an instrument used by surgeons to determine the area of sensibility, and he was unable to find anything abnormal in his condition whatever. That he (Gillett) saw the appellee a few days after he was in the

C. & E. I. R. R. Co. v. Gasner.

hospital walking around the room and he could put his limbs in any position, stand on his feet or sit up in bed; that had he been paralyzed he could not have done this; and that he gave no signs of paralysis whatever. As a medical man, I would say I don't believe he had sustained any injury at all, and if there was any, it was comparatively slight. I did give him the certificate of injury and consequent disability for the few days in July, 1897, that he was in bed, because he complained of such pain, and I gave him the benefit of the doubt, but later on, after seeing more of him, becoming satisfied that he was shamming, I refused to give him any further certificate.

H. F. Jones testified: I am at present in charge of the insurance department of the appellant; became connected with that department on August 11, 1897; previous to that time I was not in any way connected therewith, but was the law and claim agent of the appellant to investigate personal injury claims. I recollect meeting the appellee August 2, 1897, at a cottage in Danville, and had a conversation with him in the presence of Harvey Preston, the engineer. There was nothing said in that conversation by Mr. Garner in reference to his insurance, but he wanted me to get him transportation to Kentucky, and I told him I would try and get it for him from the operating department. I never told him I would send him checks for his insurance to Kentucky, and had no right to.

This was all the evidence, and it being so very conflicting on all the vital questions in the case, raised a serious doubt as to whether or not the appellee was injured and disabled as claimed by him, to an extent sufficient to render the appellant liable to him for the indemnity he sued for, so that the jury should have been assisted in the investigation of the evidence by clear, accurate and perspicuous instructions to enable them to arrive at a just conclusion on the disputed facts. Illinois Central R. R. Co. v. Hammer, 72 Ill. 347; and Volk et al. v. Roche, 70 Ill. 297.

The appellant complains that the court improperly modified its fourth instruction, and as modified made it confus-

ing and misleading. The instruction requested is as follows:

"4. The court instructs the jury that in this case, before the plaintiff can recover insurance from defendant company under his contract in question, he must first show and prove by a preponderance of the evidence that he was injured while in the employ of defendant and in the line of his duty, and that in consequence of such injury he was disabled and incapacitated from performing his usual duties in the line of his employment, and that he has presented to defendant company a certificate or certificates from his surgeon, covering the period of his disability, showing that he was disabled and that such disability was in consequence of the injury sustained by him; that to entitle plaintiff to recover he must first show a contract of insurance by defendant; second, that he was injured while in the employ of defendant, and in the line of his duty, during the continuance of such contract; third, that such injury disabled and incapacitated him from performing his duty as a locomotive fireman; and fourth, that he has presented to defendant company a certificate or certificates from his surgeon covering the period for which insurance is claimed by him, showing his disability, and that it was occasioned by his injury; that all these must concur and be proved by plaintiff by a preponderance of the evidence before he can recover."

Which the court modified by adding thereto the following:

" But the presentation of such physician's or surgeon's certificate would not be necessary if the defendant company notified plaintiff that it would not pay him anything upon the policy for reasons other than the non-presentation to the company of such certificate," and then gave it.

In the form requested the court properly refused the instruction, because the letter, notifying the appellee that the appellant would not pay him any amount on the policy, did waive the production of the attending surgeon's certificate of injury and consequent disability, but it did not, nor did any other evidence in the record show that the appellant had waived the proof of such injury and disability, or that the appellant had notified the appellee of any reasons other than the non-production of such certificate why it declined to pay him; and yet the court, by this addition, told

the jury the presentation of such certificate was unnecessary if the appellant had notified the appellee it would not pay him for reasons other than the non-production of such certificate. And when the instruction, with the modification added, is read, it is confusing and quite unintelligible on the question of waiver to the untrained minds of the jurors, and was well calculated to mislead and confuse them as to what must and what need not be proven by the appellee to entitle him to a verdict.

The vital facts in the case were in doubt on account of the sharp conflict in the evidence, and the modified instruction was inaccurate, uncertain and confusing as to what facts need and what need not be proven to entitle the appellee to a verdict. The modification also referred to matters not in evidence, and therefore it was reversible error for the court to give it.

The general rule is that if the instructions are objectionable, and their natural effect would be to mislead the jury where the facts are controverted, the verdict ought to be set aside and the case submitted to another jury with proper directions. See Adams v. Smith, 58 Ill. 418; and Cushman v. Cogswell, 86 Ill. 62.

The remarks complained of, which counsel for the appellee made in his closing argument to the jury, are as follows:

" He (appellee) is entitled to twenty-five dollars a month for seven months. * * * For what reason will you refuse it? Does the evidence show he is a fraud? It does not. No one says so except Steely (counsel for appellant). He is hired up here to say that every man that comes before him is a fraud—that there must be fraud. Kill and cripple and ruin them, and send them to the poorhouse for the county to keep them. (Objected to by the defendant.) And he comes into court and says they are a fraud. Well, I won't put that in. I withdraw the killing part. He is trying to cobweb things to go in, to trouble men, not to do justice but to heap a wrong against a fellow-citizen in the interests of his clients, because, forsooth, they are rich and powerful and can fight and pay."

These remarks, we think, were not justified by anything appearing in the record, and we can see they were well cal-

culated to arouse the passion and prejudice of, and probably did, wrongfully influence the jury against the appellant, in a case where the evidence was very conflicting on all vital questions in the case; and while there are cogent reasons why appellate courts should be careful and critical in recognizing alleged improper statements of counsel in argument to a jury, as affording grounds for reversal, yet it seems to us to be consistent with the ordinary principles upon which justice is administered, that the remarks of counsel complained of in this case were material; and we can see from an examination of the evidence that they were very likely to, and probably did, wrongfully influence the jury in returning a verdict against the appellant, which they otherwise, under the conflicting evidence might not have done; and for that reason we think it is our duty to reverse the judgment, so that a new trial may be had, where the conflicting evidence may be considered by a jury not subjected to such improper remarks (see Chase v. City of Chicago, 20 Ill. App. 274), and where the jury may receive instructions from the court that are clear and not misleading or confusing.

As to the rulings of the court in admitting improper evidence, we are unable to find any prejudicial error in that respect, but on account of the erroneous modified instruction and the improper remarks of counsel, we reverse the judgment of the Circuit Court, and remand the case to that court for a new trial.    Reversed and remanded.