The Trust Company of Chicago, Guardian of the Estate of Charles Brokovich, a Minor, Appellant, v. The New York Central Railroad Company, Appellee.

Gen. No. 38,356.

Opinion filed May 26, 1936.

LLOYD T. BAILEY, of Chicago, for appellant.

SIDNEY C. MURRAY, MARVIN A. JERSILD and HAROLD E. CHRISTENSEN, all of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

In an action brought to recover damages for personal injuries suffered by plaintiff's minor, the trial court, upon the conclusion of plaintiff's evidence, peremptorily instructed the jury to return a verdict finding defendant not guilty and entered judgment accordingly. Plaintiff appeals.

The essential facts disclose that in the late afternoon of May 1, 1933, Charles Brokovich, then 14 years of age, proceeded to defendant's railroad station located along the tracks between 92nd and 93rd streets on South Chicago avenue in Chicago to purchase for his father a monthly railroad ticket for use on defendant's trains. The boy proceeded to the station over a path frequently traveled by the public in the neighborhood, accompanied by another boy, named Perusich. In so doing he saved about two blocks walk but was required to travel over a path along the railroad embankment, cross a railroad bridge carrying the tracks above and

over 93rd street, proceed in a northerly direction along the right of way, walk diagonally across the Pennsylvania railroad tracks and several eastbound New York Central railroad tracks, all of which were on an elevated embankment, before reaching the train platform. From this platform access to the station proper, where tickets were sold, was secured by means of stairways and a tunnel. After reaching the station, Brokovich purchased and paid for the ticket and then went back up to the station platform through the tunnel and along the stairways, intending, as defendant argues, to return by the same route over which he came. It was raining, and the boys took refuge in the shelter shed on the station platform which was commonly used by passengers waiting for trains. While there the shelter house collapsed and blew over upon Brokovich, severely injuring him.

The declaration filed by plaintiff consisted of five counts. The first count charged defendant with a failure in its duty to maintain its platforms and shelters in a reasonably safe condition for plaintiff's minor, who was then using the same lawfully and upon the platform and in the shelter as an invitee of defendant. The second count charged defendant with a failure in its duty to properly maintain its platform and shelter for the protection of plaintiff's minor, who was then a guest and invitee upon the platform of defendant. The third count charged a violation of a like duty on the part of defendant in failing to properly erect, control and maintain the building and shelter at the station in a safe condition for the use of its guests, passengers and invitees. The fourth count charged that the defendant invited its guests and passengers and invitees to use and receive the benefits of this shelter shed, and that defendant negligently and carelessly allowed the roof cover and shelter to become old and dilapidated and in a generally dangerous condition. The fifth and last count, which was filed by leave of court at the time of the trial, charged

that the defendant maintained the roadbeds and other railroad equipment, including the shelter and station, and that it became the duty of defendant to maintain the same in a reasonably safe condition, but that it failed in this regard and wilfully, wantonly and maliciously maintained the platform and shelter in a wholly dangerous and unsafe condition so that it became old and decayed and while plaintiff's minor was an invitee and a guest at the station and about the shelter the roof thereof gave way, crashed and fell to the ground, injuring plaintiff's minor.

It appears from the evidence that Brokovich had gone to defendant's station for the purpose of purchasing a ticket for his father. He described the route by which he arrived at the train platform, testified that he then proceeded to the office where he purchased a ticket, and then came back up the stairway to the platform. "It was raining that day and was kind of windy," and so the boys stepped into the shelter house. Almost immediately thereafter the structure collapsed and Brokovich was severely injured. He was taken to a hospital, where he remained for about two weeks under the care of defendant's physician, and for several months thereafter he continued to receive medical attention by various physicians.

The principal issue involved is whether defendant owed Brokovich any duty to protect him at the time and place of his injury. Defendant's position is stated in its brief as follows:

"Brokovich was an invitee while he was purchasing the ticket for his father, and he would have remained such invitee, if he had left the station through the means of egress afforded by the defendant, until he was off its premises. But he chose to follow an exit not provided by the defendant in order to save two or three blocks. That means of egress took him to the train platform as to which his implied invitation did not extend. That platform was for persons arriving and leaving on trains. It was not used for the

transaction of business such as selling tickets.'' In other words, it is conceded that plaintiff's minor was an invitee on defendant's property at the time he purchased the ticket, and that if he had followed the exit to the street immediately thereafter and had been injured in so doing defendant would have been liable in damages, but it is argued that when he proceeded to the station platform along the tunnel and up the stairway provided for that purpose for passengers on incoming and outgoing trains, he thereupon immediately became either a licensee or a trespasser, to whom defendant owed no duty except to refrain from inflicting upon him wilful or wanton injury. That seems to us to be a rather narrow view of the duty owing to persons who are rightfully present on railroad property and one that cannot be sustained by the current weight of authority. The reason for the presence of plaintiff's minor on the station platform is at best a matter of conjecture. Plaintiff's counsel argues that he evidently intended to return home by the same route over which he came, and defendant's counsel seems willing to have us indulge in that presumption. There is no direct evidence bearing on that question, however, and we think it relatively unimportant. The essential fact is that Brokovich came to the station upon legitimate business in which both he and the defendant had a mutual interest. While there he had a right to move about the depot and premises within reasonable bounds and was entitled to receive the protection of defendant for his own safety. It is not unusual or unnatural for a lad of 14 to move about the station house and property of a railroad company under circumstances such as these, and in this instance he traveled along the passage regularly provided for passengers using the station and those who had an implied invitation to use the premises. It has been generally held that depots, grounds and passenger houses are not strictly private property but are places where persons may resort without permission for the purpose of transacting

business with the company or with the employees of the company, for the purpose of meeting friends or others arriving on trains or to see others depart, and to pass over the same in going from one part of the city to another.

"Such grounds are made *quasi* public, by the general use to which they are appropriated. In populous cities, such grounds, from necessity, must be kept open to public use to a limited extent. . . . When they permit the people to pass over their grounds, and invite the public to transact business with them on these grounds, they thereby tacitly license persons to come upon and pass over them, and persons do not become trespassers by doing so in a proper manner." (*Illinois Cent. R. Co. v. Hammer,* 72 Ill. 347, 349.)

In *Newberry v. Baltimore & O. T. R. Co.,* 223 Ill. App. 304, plaintiff was injured while at a railroad depot where she had gone to accompany her son, who was departing on a train. The court said (p. 307):

"If the presence of plaintiff upon the premises was due to an invitation from the owner, express or implied, and not by mere permission, it became the owner's duty to keep the premises in a reasonably safe condition. (*Milauskis v. Terminal Ry. Co.,* 286 Ill. 547.) . . . This liability for injuries arising from its negligence extends not only to passengers but also to those who are on the premises for the purpose of welcoming or bidding farewell to passengers. *Hamilton v. Texas & Pac. Ry. Co.,* 64 Tex. 251; *Doss v. Missouri, K. & T. Ry. Co.,* 59 Mo. 27; *Klugherz v. Chicago, M. & St. P. Ry. Co.,* 90 Minn. 17. The obligation arises from the public character of such corporations and the duties resulting from their acceptance of a charter from the State. *It exists as to all who are rightfully upon the premises. Tobin v. Portland, S. & P. Ry. Co.,* 59 Maine 183."

In *Neice v. Chicago & Alton R. Co.,* 254 Ill. 595, it was said (p. 603):

"Upon the right of way of the railroad where the public are not invited or authorized to go for the

transaction of business with the railroad company, those in charge of the train must have knowledge both of the presence of the trespasser and of his dangerous situation, but depot grounds and platforms provided by the railroad company for the use of the public in the transaction of its business, where persons have a right to be for legitimate purposes and where they may reasonably be expected, are quite different. If they are there for a legitimate purpose in connection with the business of the company they have a right to demand the exercise of reasonable care for their safety. If they are simply idlers, loiterers or trespassers the duty of the company is only to abstain from wilfully or wantonly injuring them. But the duty is owing to an indeterminate part of the public generally, and if there is a disregard of that duty, one of the general public who happens to be in such position as to be the sufferer from the violation of the duty will have a right of action for any injury he sustains.''

Defendant's counsel takes the position, however, and the court evidently agreed with them, that the implied invitation which it is conceded Brokovich had in connection with the purchase of a ticket for his father did not extend to the train platform where he was injured. We cannot agree with this view of the duty owing to persons rightfully present on railroad property. Plaintiff's minor was in no sense a trespasser, he was not a loiterer, nor was he wandering about the station in dangerous places not intended for the general public. When injured he was taking shelter on the train platform provided for the public for that purpose, and he was not obliged, as defendant contends, to immediately leave the station by one of the exits provided for that purpose. In *Pauckner v. Wakem,* 231 Ill. 276, defendants conducted a general warehouse business in the city of Chicago. The Chicago Tribune had certain pieces of machinery stored in defendant's warehouse and sent plaintiff and another of their employees there to secure the machin-

ery required, which was inclosed and stored in boxes. One of the warehouse attendants showed plaintiff where the goods were kept and pointed out to him the nearby door through which the boxes could be removed. At this point appellee asked permission to use defendant's washroom, and while proceeding there through a passageway in another part of the warehouse, fell down the elevator shaft and was injured. Judgment was rendered in plaintiff's favor and affirmed by both the Appellate and Supreme Courts. In the course of its opinion the Supreme Court said that "the owner of premises owes no duty to exercise ordinary care to keep the same in a reasonably safe condition to persons who may be upon such premises as mere licensees," but that if plaintiff "was on the premises at the time and place of the accident by the invitation, either express or implied, of defendants, they owed him the duty to exercise ordinary care for his safety *while upon said premises.*" It also stated in the opinion that the "invitation to appellee was to go into the warehouse to get such goods belonging to his employer as were wanted, and for this purpose the invitation must be held broad enough to give appellee the protection of the law while lawfully upon that portion of the premises reasonably embraced within the object of his visit." Defendant adopts the language thus employed to fortify its argument that the object of Brokovich's visit to the station was to purchase a ticket, and that "by no stretch of the imagination did that include going up the stairway and on to the train platform." We prefer to place the broader construction upon the doctrine thus invoked to meet the ends of justice and to hold that Brokovich's presence in the platform shelter was reasonably embraced within the object of his visit to the station. Since railroad station property is of a *quasi* public nature and plaintiff's minor was admittedly there on legitimate business, his status as an invitee remained unchanged up to the time of the injury. We think he did not overstep the bounds of the use of the

premises to which his implied invitation entitled him.

In *Southern Ry. Co. v. Myrick,* 12 Ga. App. 241, plaintiff had gone to the railroad station to wait for a train on which he expected the arrival of certain passengers. He learned that the train would be 30 minutes late and decided to pass the intervening time at the home of a friend who lived nearby. He went around the station office near the side door of the freight room and proceeded down the steps at this point, it being the nearest way from the platform to his destination. There were no lights on the stairway and he stumbled over some skids used for loading and unloading cars. There was evidence tending to show that the steps he took in descending from the platform had been used by the public. In affirming judgment in his favor, the court said (p. 244):

"It must be conceded that plaintiff was at the station and in the waiting room and on the platform for a lawful purpose. He was there protected by the implied invitation of the company to meet a passenger on an expected train, . . . and in leaving the platform he had the right to make use of any means of egress from the waiting room, over the platform that was used by the public for that purpose. Unquestionably, it would have been better for him to have used the steps leading into the waiting room that he had used in coming to the station, but he was not necessarily guilty of negligence because he used other steps leading from the platform, if these steps were means for ingress and egress provided by the company for passengers or the public generally who had business with the railroad company; . . ."

A considerable portion of the briefs on both sides is devoted to the question whether the court erred in excluding evidence tending to show that the approach to the station over the Pennsylvania tracks and defendant's right of way had for many years been continuously and frequently used by persons in the neighborhood traveling on defendant's trains, and the legal question as to the relationship of such persons to

defendant; that is, whether they were trespassers or licensees. In the view that we take, the determination of this question is immaterial, because plaintiff's minor was not injured in approaching the station. The vital question in the case is whether his implied invitation in connection with the purchase of the ticket for his father extended to the use of the train platform where he was injured. After careful consideration of the authorities we conclude that while at the station he was at all times an invitee, and as such, and as "an indeterminate part of the public generally," he was lawfully present on the station grounds and private property of defendant and therefore entitled to the protection which the law affords persons of that class, to keep the premises in a reasonably safe condition.

It follows from what we have said that the court erred in peremptorily instructing the jury in defendant's favor. Therefore the judgment of the superior court will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

SCANLAN, P. J., and SULLIVAN, J., concur.