GULF & SHIP ISLAND RAILROAD COMPANY *v.* CHARLES
BLOCKMAN.

[39 South. Rep., 479.]

1. RAILROADS. *Injury of employe. Accident.*

A railroad company is not liable to an employe for purely acci-
dental injuries.

2. SAME. *Constitution* 1890, *sec.* 193.

Where an engineer, whose locomotive became disabled by the loss
of a valve key while on a run, directed a fireman subject to his
control to hold a light so that he could drive a file into the key-
hole, thereby enabling the locomotive to do its work, and splinters
flew from the file each time he struck it with a hammer, one of
them entering the fireman's eye, the injury to the fireman was
an accidental one, and the railroad company is not liable there-
for, either at common law or under Constitution 1890, sec. 193,
providing that every employe of a railroad corporation shall have
a right of action for an injury resulting from the negligence of
any person having the right to control his services, and that
knowledge by an employe of the unsafe character of any ma-
chinery or appliance shall be no defense to an action for an
injury caused thereby.

FROM the circuit court of, first district, Hinds county.

HON. DAVID M. MILLER, Judge.

Blockman, the appellee, was plaintiff in the court below; the
railroad company, appellant, was defendant there. From a
judgment for five hundred dollars and costs in plaintiff's favor
the defendant appealed to the supreme court. The facts are
fully stated in the opinion of the court.

*McWillie & Thompson, E. J. Bowers,* and *James H. Neville,*
for appellant.

In endeavoring to repair his engine so· that he might take his
train to its destination, the engineer was discharging a plain
duty not only to his company, but as well to the public, which
should not be subjected unnecessarily to the inconvenience and

hazard of an obstructed track. The undisputed evidence shows that the instrument he employed was an entirely adequate one and the only available one. That the file was adequate is shown by the fact that it was made to serve in place of the lost key, and sufficient to enable him to run his train over a hundred miles to its destination; and his statement that he had nothing else to supply the place of the key is uncontradicted. The file seems to have been just the ordinary steel file, and we submit as a matter of common knowledge in respect to the nature of metals that it could not have been inserted into the receptacle of the key unless, as shown by the evidence, it was of about the same shape as the key and fitted pretty well into the receptacle. While the appellee suggests that the file splintered or crumbled under the blows of the hammer, it will be noticed that the testimony in his behalf is very vague as to the extent to which it did so, and there is absolutely no evidence showing that there was anything in the appearance of the file to indicate that it would do so, and that the appellee says the whole thing was as sudden as "a shot out of a gun." Moreover, the engineer distinctly states that he saw nothing fly off from the end of the file, and that it was not imperfect or rotten steel quite sufficiently appears from the fact that it served in place of the key during a run of more than one hundred miles.

It will necessarily occur to the court that in this case several things are lacking to make good the charge of negligence apart from the showing that the engine was started out with the key in place; that it became necessary to repair the engine in order to continue the journey; and that the only available agency, and that an entirely adequate one, was resorted to by the engineer to meet the emergency that had arisen. In the first place, it was not shown that the file was either apparently or in fact made of such poor metal that its use for such purpose was improper; nor, in the second place, that the hammer was too heavy to be applied in placing the file; nor, in the third place, that the en-

gineer used undue force. All that is shown is that a particle of steel flew off and struck plaintiff in the eye, and this we insist was a mere accident. Railroad companies are not liable for pure accidents. 4 Elliott on Railroads, sec. 1697; *Wabash, etc., R. Co. v. Locke,* 112 Ind., 404 (s.c., 14 N. E. Rep., 391); *Armour v. Ryan,* 61 Ill. App., 314; *Handelum v. Burlington, etc., R. Co.,* 72 Iowa, 709 (s.c., 32 N. W. Rep., 4).

And the fact that an injury occurred to an employe, and that it was possible to have prevented it had the company anticipated it, is not the legal test of negligence on the part of the company. Elliott on Railroads, sec. 1697. There is no presumption in appellee's favor of negligence on the part of the company either at common law or under Code 1892, § 1808. The injury did not result from the running of the cars of appellant, but while they were entirely stationary; and, besides, as an employe, appellee was not entitled to the benefit of that statute. *Hughes v. Railroad,* 49 Miss., 258; *Dowell v. Railroad Co.,* 61 *Ib.,* 519.

The appellee showed nothing except the fact of injury and relied upon the doctrine of *res ipsa loquitur* as affording a basis of liability. The case is not one resting in contract, as it would have been were the appellee a passenger, and we insist that the very nature of the accident excludes it from the class in which the mere occurrence implies negligence. *Bell v. Refuge Oil Mill,* 77 Miss., 387 (s.c., 27 South. Rep., 382).

Unless the injury was one that might have been anticipated as the probable result of the act—that is to say, one that might have been reasonably expected as contradistinguished from a merely possible result—the above doctrine has no application; for if we are to look to possible as well as probable results, liability would follow in every case, since the bare happening of the occurrence would always show that it was possible. In this case there was an absence of those elements before mentioned going to make injury probable, and, in addition thereto, the fact that even should a particle fly off from the file when struck, it would

be by no means probable that out of the wide space through which it might move it would pursue the particular course that would take it to the eye of a bystander. In the ordinary chopping of wood where chips fly in different directions under the woodman's ax, persons have sustained serious injury to their eyesight, but that is by no means regarded as a probable consequence of proximity to one so engaged. The accident in question was an event not due to the act of God without human agency, but one resulting, undesignedly and unexpectedly, through the intervention of human agency. The appellant's engineer was only doing his duty and could not have anticipated injury to the appellee. On the subject of accident we beg to refer to the following: 1 Cyc., 227, 228; 1 Am. & Eng. Ency. Law (2d ed.), 272 *et seq.;* 1 Shearman & Red., Neg., secs. 16, 33; 4 Elliott on Railroads, sec. 1584.

If there be any probative force in the showing made by the plaintiff that he saw particles flying from the file as it was struck by the engineer and the whole occurrence was not so sudden as to relieve him of all duty to protect himself and at the same time relieve the engineer from all blame, then there was no reason why the appellant should not have been allowed to make the defense of the contributory negligence of the appellee in exposing his eyes to injury. There was no evidence for the appellee that the engineer knew that the particles were flying from the file, and he states that he saw none and did not know for some time afterwards that the appellee claimed to have been hurt. The appellee did not protest or even call the engineer's attention to the flying particles, and after seeing that the particles were flying off he made no effort to protect his eyes by turning away his head or by shielding his eyes with his disengaged hand or even by shutting them. The particles were incapable of doing harm to him anywhere else than in the delicate organ that he claims was injured, and he could have held the light for the engineer and at the same time easily and fully protected his

eyes.   He seems to have done nothing of the kind; and if the danger was obvious and should have been seen by the engineer, it was, in fact, seen by him, the appellee.

Where the danger is obvious the servant will be taken to have assumed the risk, and the master is not liable for the resulting · injury.   Truly v. Lumber Co., 83 Miss., 430 (s.c., 36 South. Rep., 4); Welsh v. Railway Co., 70 Miss., 20 (s.c., 11 South. Rep., 723).   The case is one for the application of the following well-settled principles:

(a) Where unexpected injury results from an act it must be treated as an accident, unless the negligence of the person causing the injury was the proximate cause of the injury; and negligence cannot be imputed to such person if he used the kind and degree of care necessary to the exigency and in the circumstances in which he was placed.   1 Am. & Eng. Ency. Law (2d ed.), 272, 276.   And even where the act is intentional and improperly aggressive, a wholly unexpected injurious result is classed as an accident involving no liability, as where a stone is thrown at one whose eye is thereby put out.   Harvey v. Dunlap, Hill & D. Supp. (N. Y.), 193.

(b) Where an employe continues in the prosecution of work so obviously dangerous that an ordinarily prudent man would have seen the hazard, without complaint or any assurance that the danger would be lessened or obviated, he will be taken to have assumed the attendant risk.   20 Am. & Eng. Ency. Law (2d ed.), 124.

(c) An employe is guilty of contributory negligence where his injuries result from dangers so obvious and threatening that a reasonably prudent man, under similar circumstances, would have avoided them, and this rule applies whether the employe knew the dangers on entering the employment or afterwards became acquainted with them and continued in the employment. 20 Am. & Eng. Ency. Law (2d ed.), 139.

(d) An employe is under a duty to call attention to the de-

fects which cause his danger.    20 Am. & Eng. Ency. Law (2d ed.), 143.

·(e) Where the servant from the nature of his employment has better knowledge of the dangers than the master or his fellow-servants, he cannot recover for injuries received by him.    20 Am. & Eng. Ency. Law (2d ed.), 131.

(f) An employe who is engaged in work that exposes him to danger must exercise his faculties of sight and hearing, and his employer is not liable for injuries resulting from his failure to do so.    20 Am. & Eng. Ency. Law (2d ed.), 144.

(g) The negligence of the master or other person having the authority to control an employe does not relieve the latter of the duty of avoiding dangers that would be obvious to a prudent person.    20 Am. & Eng. Ency. Law (2d ed.), 148.

There being no fault in the use of the file, and plaintiff having all the knowledge of its character that the engineer could have possibly had, the case is seen to be essentially similar to one in which this court rejected the theory of liability for injury from a flying particle of metal.    *Kent* v. *Railroad Co.,* 77 Miss., 494 (s.c., 27 South. Rep., 620).

The following cases involved similar injuries occasioned to the eyesight of employes by bits of steel flying in the one case from a chisel and in the other from a hammer, the ruling being against liability of the master in both cases: *Fordyce* v. *Stafford,* 22 S. W. Rep., 161 (s.c., 57 Ark., 503); *Hopkins Bridge Co.* v. *Burnett,* 19 S. W. Rep., 886 (s.c., 85 Tex., 16).

Suppose in this case, instead of using the file, the engineer had concluded that a good wooden peg would do, and in cutting down a hickory sapling to get one, a chip had flown into plaintiff's eye who was aiding him by holding a light, would the case be essentially different, and would it either afford an illustration of a defective appliance or be one for the application of the constitutional provision in any aspect?

*Robert B. Ricketts, Frank M. Peyton,* and *Green & Green,* for appellee.

The issue as to whether the occurrence was the result of negligence or a simple accident was fully presented to the jury, and the principles of law governing such cases were fully and favorably set out by the instructions given on behalf of the appellant. The engineer was guilty of negligence, first, in using the file for a purpose for which it was never intended and for which it was unfit; and, second, in using it in so careless a manner that as a result of the violent blows struck on the brittle file particles flew off from it in such a way and with such force as to put out the eye of his subordinate, who, in compliance with the orders of his superior, was standing near by.

This question is a question of fact, and was properly left to the jury under the instructions of the court; and the jury, with the full statement of the law before them, and after hearing the arguments of the able counsel for the appellant, have said that upon the facts of this case the appellant was negligent and that the injury to the appellee was the result of the negligent acts of the appellant. The jury have, by their verdict, also decided, and they had in the sixth instruction given for the defendant a full statement of the law on this point, that the acts complained of were such as to expose the plaintiff to probable danger, and not to mere possibility of injury. It was properly left to the jury to say whether or not the use of the file, made as it was of brittle material, and the use of it in the manner in which it was used by the engineer, were such act or acts as to expose the appellee to probable danger, and also whether or not the engineer exercised such care under all the circumstances as a reasonably prudent man would have exercised in like circumstances, and by their verdict they have decided on both of these points adversely to the appellant. The time for the argument made in the brief for the appellant upon this point was in the trial in the lower court and before the jury, and this court will not now set aside the finding

of the jury upon the facts.     21 Am. & Eng. Ency. Law (2d ed.), 498; *Railroad Co.* v. *Turner,* 71 Miss., 403 (s.c., 14 South. Rep., 450). "It is a question for the jury as to whether the consequences of the defendant's negligent act ought to have been foreseen," etc.     *Lillibridge* v. *McCann,* 41 L. R. A., 381, 385.     The finding of the jury will, in the circumstances, not be disturbed by this court.     *Railroad Co.* v. *Cantrell,* 70 Miss., 329 (s.c., 12 South. Rep., 344); *Railroad Co.* v. *Williams,* 67 Miss., 18 (s.c., 7 South. Rep., 279); *Railroad Co.* v. *Doggett,* 67 Miss., 250 (s.c., 7 South. Rep., 278).

The argument of the counsel for appellant in their brief on this point seems to be largely based upon the supposed fact that the file was a good file and was made of good metal.     What difference can it make that the file was a good one?     It was a file, and files are necessarily made of hard and brittle metal, and if struck hard, are likely to break and splinter.     The engineer knew this, and, knowing it, not only used the file for a purpose for which it was never intended to serve, but used it in such a careless way and with so little regard for the safety of other people that the appellee—who, obeying the orders of his superior, and standing within a few feet—was struck and severely and permanently injured.     Nor should there be any weight attached to the argument that the engineer saw nothing break off the end of the file.     If he used a piece of material that was likely to break and splinter if struck hard and used it in such a manner as to make it splinter, what difference can it make that he did not see the flying pieces?

"Admitting the negligence of the engineer, was there evidence to show that the appellee was guilty of contributory negligence?"

It is urged on the part of the appellant that the appellee was guilty of contributory negligence, or, to be more exact, that there was evidence that tended to show contributory negligence on the part of the appellee, and that the question of his negligence should have been submitted to the jury.

Was it negligence on the part of the appellee to stand by while the engineer made repairs on the engine even though the material used in making such repairs was of such a nature that the careless or reckless use of it might make the position of the appellee one of danger? It can hardly be contended that it was the duty of the appellee to assume that the engineer was going to use the material—the file—in so careless a manner as to injure him. There would be just as much force in a contention that where the fireman was injured in a wreck caused by the negligence of the engineer he was guilty of contributory negligence in getting on the locomotive at all if he knew that the locomotive was such a machine as, if carelessly used, would probably injure him. The testimony of the appellee on his cross-examination shows that the engineer had struck only two or three blows when the piece of file that injured him was broken off. He testified that the piece that struck him came like a shot out of a gun. The time that elapsed between the striking of the first blow by the engineer and the injury to the fireman was so short as to be almost inappreciable. Before the appellee had time to realize that the engineer was using the file and the hammer in a negligent manner the injury had been inflicted. Note the answer to the question, "Why didn't you turn your head?" "I didn't have time." Surely this shows that the appellee was not guilty of contributory negligence on account of any acts testified to by him, and the testimony of the appellee is the only testimony on which, under our rules of pleading, such a defense could be predicated.

There is nothing in the record in this case upon which to base the contention that the appellee assumed an obvious hazard in standing where he did. How could he have been charged with any duty to avoid the consequence of the negligent performance of a piece of work which, even though improper material was used, could easily have been performed with safety? Knowledge on the part of the fireman of the unsafe or unsuita-

ble character of the appliance used by the engineer does not make him assume the risk of injury resulting from its use.

There is no similarity, except on the point of the nature of the injury inflicted in each case, between the case of *Kent* v. *Railroad Co.,* 77 Miss., 494 (s.c., 27 South. Rep., 620), and the present case. There the injury resulted from the use in the manner in which it was intended to be used of a tool made and sold for that particular purpose. It cannot be contended, with any show of reason, in the present case, that the file was used for a purpose for which it was designed.

The record in this case clearly shows that the engineer had the right to control and direct the services of the fireman, and the rule as to the negligence of the superior in such cases was clearly laid down and sec. 193 of the constitution construed and applied in the case of *Southern Ry. Co.* v. *Cheaves,* 84 Miss., 565 (s.c., 36 South. Rep., 691), and in the former opinions in the same case.

CALHOON, J., delivered the opinion of the court.

Without giving any consideration whatever to the testimony introduced on behalf of defendant in the court below, we find that presented on behalf of plaintiff, at its strongest, to be this: Plaintiff was the fireman of a locomotive of defendant, which, on a run at night, ceased to work, stopped, and would go no further. The engineer on examination found that the trouble arose from the fact that a valve key had worked out and was lost. Thereupon the engineer, who was the agent or officer of the railway company superior to plaintiff, with the right to control and direct his services, had him to pull the reverse lever back so as to disclose the point of difficulty, and then had him to get on the engine and bring a file, which he proposed to substitute for the valve key, and then to hold a lantern while he drove the file into the hole designed for the valve key. While the engineer was hitting the file with his hammer "pretty hard to drive it in there," the file being very brittle, pieces flew from

it, and one of the splinters struck plaintiff in the eye, resulting in its becoming blind, as will probably be the case with the other eye through sympathy. Two or three blows were struck with the hammer before plaintiff was hit. He saw splinters fly from the first, and could have turned his head "if I knew it was going to hit me." He says, also, in answer to a question whether it is not the fact that he did not think there was danger until he got hit: "I knew the file would break when you would go to beating on it." Elsewhere he says, "Every lick he hit it, there was something flew from it," and that this was apparent to the engineer, who never told him to get out of the way. The file served as a substitute for the valve key, and the train went on to its destination.

The effect of this accident on the appellee is very deplorable indeed; but whether appellant is liable for damages is a question of law, and not of sympathy. All men are subject to such chances of hurt, but compensation may be had only where the hurt is because of some breach of duty. At common law there could be no recovery in this case on the facts, and it cannot be sustained now unless because of some of the provisions of Constitution 1890, sec. 193. By no fair construction, however strained, can we refer the facts here, under the common law or the constitution, to the class of defective or unsafe character or condition of "machinery, ways, or appliances" by any rational intendment. Neither can we find that negligence, as understood in the law, or ordinary perception of facts by the public, can be properly imputed to the engineer by this record. The event here was extremely improbable, not to be foreseen or provided against by the appellant, however prudent. Liability could not reasonably be held to have been incurred by the engineer himself. The engine was made useless by the casualty of the loss of the valve key. Immediate substitute for it was absolutely demanded by the requirements of travel and commerce; it was necessary to the interest of defendant and of the

public at large that the engine should be put in shape to go. In this emergency the engineer did what any sensible man would have done. He got the best substitute he could have gotten— the file—and drove it in. He himself incurred whatever danger there was in it. He could not have foreseen there was any in it. The danger itself was not apparent, and belongs to the realm of mere possibility or conjecture, and even this could have been easily avoided by plaintiff by merely turning his head when he first observed the splinters fly from the file. This case belongs in the category of accident, pure and simple; and the damage might occur at any time to anybody in making a fire, cutting a tree, or driving a nail by another. *State* v. *Becker* (Del.), 33 Atl., 178; *Alexander* v. *Bailey,* 70 Tenn. (2 Lea), 636; *Aurora* v. *Grimes,* 13 Ill., 585; *Osborne* v. *Van Dyke,* 113 Iowa, 557 (85 N. W., 784; 54 L. R. A., 367); *Raiford* v. *Wilmington,* 130 N. C., 597 (41 S. E., 806); *Wendall* v. *Chicago* (Mo. App.), 75 S. W., 689; 1 Words & Phrases, 64, 65.

The peremptory instruction asked by defendant below should have been given.

*Reversed and remanded.*