The Aurora Branch Railroad Company, Appellants, *v.* Jacob Grimes, Appellee.

### APPEAL FROM KANE.

A party seeking to recover damages for a loss which has been caused by negligence or misconduct, must show that his own negligence or misconduct has not concurred in producing the injury.

The degree of care which a plaintiff should exercise, will depend upon the relative rights or position of the parties at the time of the injury; where both parties are equally in the position of right, independent of the favor of the other, the plaintiff is only bound to show that he exercised ordinary care and diligence to avoid the injury; otherwise if he is enjoying a privilege or favor, without compensation, of the party complained of.

If the plaintiff alone is in fault, or if both parties are equally in fault in committing an injury, the aggrieved party cannot recover.

This case was heard at the May term, 1852, of the Kane Circuit Court, Wilson, Judge, presiding. Trial by jury. Verdict and judgment for Grimes for $110 and costs. The railroad company brought the cause to this court by appeal.

The opinion contains a statement of the case.

W. B. Plato and Glover & Cook, for appellants.

Thomas C. Moore, for appellee.

Caton, J. This is an action on the case brought by Grimes against the railroad company, to recover the value of a mare which was killed in a well belonging to the company. It appears that the appellants own a railroad and depot at Batavia.

At a point where the main track and the side track for the depot are some distance apart, they have a well, which is situated between the two tracks, which is distant from the west track from six to ten feet. The well was about six feet across, and was covered with oak boards one inch thick and twelve feet long, and mostly with two thicknesses. There was no other inclosure of the well. The place between the tracks where the well was situated was not frequented by teams or the public. The top of the well was even with the surface of the ground, which was nearly level between the two tracks. In December last, a car load of lumber arrived at the depot for Grimes, which was left standing on the west track, where freight was usually discharged. He desired it moved on to the west track, that it might be discharged at his lumber-yard. The agent of the road declined moving it from the usual place of discharging freight, when Grimes, with the consent of the agent, hitched his mare to the car, and moved it to the desired place.

A few days after, another load arrived, and was left in the same place as the former, when Grimes, without consulting the agent, again hitched the mare to the car, and removed it to the west track. When they had got a short distance beyond the well, the mare refused to draw, backed off the track, became entangled in the traces and got down, and in her struggles got into the well and was killed. When the first car was removed, Grimes led the mare, and she worked well. Upon the last occasion, one witness says, he also led her, while another says he was behind and driving her, when she refused to draw and backed off the track, and that he thinks the plaintiff pulled her off by the line. The mare was a spirited, restive animal. Cars are not usually propelled by horses on that road; but one other person had been seen to move cars, with steady horses, at that place. These are the leading features of the accident, as described by the testimony, and sufficiently in detail to enable us to understand the instruction which was refused, and of which complaint is made. That instruction was: " If the jury, believe from the evidence, that the injury done to the plaintiff's horse was the result of the fault or negligence of the plaintiff, or the fault or negligence of both the plaintiff and defendants, without any intentional wrong on the

part of the defendants, then the plaintiff cannot recover, and the jury must find for the defendants."

Where a party seeks to recover damages for a loss which has been caused by negligence or misconduct, he must be able to show that his own negligence or misconduct has not concurred with that of the other party in producing the injury, and the burden of proof is upon the plaintiff, to show not only negligence on the part of the defendant, but also that he exercised proper care and circumspection; or, in other words, that he was not guilty of negligence. Lane *v.* Crombie, 12 Pick. 177.

As to the degree of diligence or care which the plaintiff must show himself to have exercised, upon a cursory examination of the cases on this subject, an apparent conflict may be supposed to exist, but a careful examination of the facts of each case will show that such is not in fact the case. The degree of care, which the plaintiff is bound to exercise, will be found to depend upon the relative rights or position of the parties in relation to the rights exercised or position enjoyed by the plaintiff at the time the injury complained of happened. As growing out of these relative positions of right, two classes of cases will be found. Where both parties are equally in the position of right, which they hold independent of the favor of each other, the plaintiff is only bound to show that the injury was produced by the negligence of the defendant, and that he exercised ordinary care or diligence in endeavoring to avoid it. Or that by the exercise of ordinary care he could not have avoided it. Thus, in the case of Butterfield *v.* Forrester, 11 East, 60, the defendant had placed an obstruction in a part of the public road, and the plaintiff rode furiously along the road and was injured by it. And Lord Ellenborough held: " Two things must concur to support this action, an obstruction in the road by the fault of the defendant, and no want of ordinary care on the part of the plaintiff." This case has been referred to in nearly all the subsequent cases on this branch of the law, and may well be considered a leading case on this subject. It has undoubtedly been sometimes misapplied, and its doctrine carried beyond the principle of the case itself, but in no subsequent well-considered case do I find the rule as applied to such a case denied or limited. In Beers *v.* Housatonic

Railroad Company, 19 Conn. 566, the plaintiff's servants were driving a drove of cattle along the highway where it crossed the defendants' railway, when the defendants' locomotive passed along the railroad, and by the negligence of their servants was run against and injured some of the cattle, while upon the track. After a pretty extensive review of the authorities, the court in that case said: " The rational rule, and the one as we think established by the best authorities in reference to the care incumbent on the plaintiff is, that it must be ordinary care, as it is termed, which, as stated by Lord Denman, C. J., in Lynch *v.* Nurdin, 1 Ad. &. El. N. S. 36, (41 E. C. L. 422, 425,) in interpreting the phrase as used by Lord Ellenborough in Butterfield *v.* Forrester, 11. East, 60, means, ' that degree of care which may reasonably be expected from a person in the plaintiff's situation,' and is synonymous with reasonable care."

In Kinnard *v.* Burton, (12 Shepley, 39,) the action was for damage occasioned by a collision in the highway, where both parties had a right to be, and the court laid down the following rule : "An examination of all the cases leads to the conclusion that the correct rule is, that if the party, by the want of ordinary care, contributed to produce the injury, he will not be entitled to recover. But if he did not exercise ordinary care, and yet did not by the want of it contribute to produce the injury, he will be entitled to recover." In all these cases, it will be observed, that the plaintiffs were exercising their undoubted rights, with which the defendants had no right to interfere at the time the injury complained of was inflicted; and in such cases, I have no doubt, the plaintiff is only bound to exercise that degree of care which may be reasonably expected from a man of ordinary prudence in such a situation.

The case of Bird *v.* Holbrook, 4 Bing. 628, (15 E. C. L. R. 91,) is one of another and peculiar class of cases, of which but few are to be met with, where the plaintiff was allowed to recover, although he was doing an unlawful act at the time he sustained the injury. There, the defendant had placed a spring-gun in his garden, for the purpose of shooting trespassers, and sedulously concealed the fact; and the plaintiff went into the garden for the purpose of reclaiming a stray fowl, and was

wounded by the gun. The plaintiff was allowed to recover, expressly on the ground that it was inhuman and cruel to place such an engine of destruction where it might endanger human life, without giving notice thereof; and that the only lawful design of placing such machines is that of terror and not of destruction. In the case of Ilott *v.* Wilks, 3 B. & A. 304, (5 E. C. L. R. 295,) the plaintiff went into the defendant's woods, having had notice that spring-guns were set there, and was injured by one of them, and it was held that he could not recover. Bayley, J., said, " It is sufficient for a party, generally, to say, ' There are spring-guns in this wood;' and if another then takes it upon himself to go into the wood, knowing that he is in the hazard of meeting with the injury which the guns are calculated to produce, it seems to me that he does it at his own peril, and must take the consequences of his own act." In the previous case of Deane *v.* Clayton, 7 Taunt. 489, (2 E. C. L. R. 461,) the action was for the loss of a dog, which had pursued a hare into the defendant's preserves, and was killed by spikes placed there for that purpose. The plaintiff had used every effort to restrain the dog from pursuing the hare into the defendant's premises; and the court was equally divided upon the question of the right of the plaintiff to recover, each of the four judges delivering a very elaborate opinion; and since that time there is no case affirming the right to recover for the loss of property even under such circumstances.

There is another case, which would seem to be an exception to the general rule, that the party who was not in the exercise of a legal right was allowed to recover for an injury which was imputed to the carelessness of the defendant's servant, while the plaintiff was not only chargeable with carelessness, but with an actual trespass upon the defendant, when it would seem to me that gross carelessness could not be properly imputed to the defendant or his servant. It is the case of Lynch *v.* Nurdin, 1 Adolph. & El. N. S. 29, (41 E. C. L. R. 422,) where a child seven years old was allowed to recover damages against the defendant, whose servant had allowed his horse and cart to stand for half an hour unattended in the street of a town, when the plaintiff and other children were playing about them; the

plaintiff got into the cart, and another boy led the horse along; when the plaintiff was getting off the shaft, he fell, was run over by the wheel, and his leg was broken. The plaintiff was allowed to recover upon the principle that he was incapable of exercising prudence, and that therefore he should not be charged with negligence. Two years before this decision was made a similar question was decided by the Supreme Court of New York, (Hartfield *v.* Roper, 21 Wend. 615,) where the opposite rule was laid down, under much stronger circumstances, in favor of the plaintiff. The plaintiff was a child of two years old, and, while sitting or standing in the public highway, he was run over by the defendant, Roper, who was driving a sleigh and horses. At the time of the accident the defendant was descending a hill, and the road was in full view during the whole descent. There were three persons in the sleigh, none of whom saw the child till the horses had passed over it. Although admitting that the child was totally incapable of exercising any discretion, the court held him guilty of negligence in being in the road or not getting out of it; and that the defendant was not guilty of gross negligence in not seeing him, and that the action could not be sustained. I have referred to these cases for the purpose of showing that neither may be considered as conclusively settling the law upon the particular subject to which they relate; and that, at most, one of them may be considered as indicating an exception to the general rule which I have before laid down.

The case of Pluckwell *v.* Wilson, 5 Carr. & P. 375, (24 E. C. L. R. 368,) may be considered a fair representative of the other class of cases, which hold that the plaintiff who is himself in the wrong, or not in the exercise of a legal right, must use extraordinary care before he can complain of the negligence of another. That was an action on the case for an injury sustained by the plaintiff by a collision in the highway, when the plaintiff was himself on the wrong side of the road; and " Mr. Justice Alderson left it to the jury to say, whether the injury to the plaintiff's chaise was occasioned by negligence on the part of the defendant's servant, without any negligence on the part of the plaintiff himself; for that, if the plaintiff's negligence in

any way concurred in producing the injury, the defendant would be entitled to the verdict. Also, they would have to say, whether it was altogether an accident, in which case, also, the defendant would be entitled to the verdict. His lordship also observed, that a person was not bound to keep on the ordinary side of the road; but that, if he did not do so, he was bound to use more care and diligence, and keep a better look-out, that he might avoid any concussion, than he would if he were to confine himself to his proper side of the road." Here, the plaintiff himself being in a wrong position, was bound to use more than ordinary care, to avoid an injury. Other instances may be mentioned where justice and propriety would require an extraordinary degree of care to avoid accident, as where the party injured was at the time enjoying a privilege or favor granted, without compensation or benefit to the party granting it, and of whose carelessness complaint is made. As if I gratuitously allow a person to pass through my field, he should be held to use extraordinary care before I should be made liable for an injury which he sustains by an obstruction which I had carelessly left in the way. And this, upon the same principle that the bailee of a horse, to whom he is gratuitously loaned, is bound to take extraordinary care of him, else he will be responsible if any injury befall him ; while he who hires a horse is only bound to use him with ordinary care.

Whether the one rule or the other should be applied to the case before us, we are equally clear that the instruction should have been given. The substance of the instruction was, that if the plaintiff alone was in fault, or if both parties were equally in fault, the plaintiff could not recover. This, certainly, is the rule of law, even though the plaintiff was only bound to use ordinary care; for, if both used ordinary care, then the misfortune was an accident, without the fault of either, and the loss must rest where the misfortune placed it; and if neither used ordinary care, then, for the want of it, the plaintiff cannot recover, even admitting that he had as much right to be upon the track as the company had to dig the well.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*