**Minnie Maki, Administrator of the Estate of Charles Raymond Maki, Deceased, Plaintiff-Appellant, v. Calvin Frelk, Defendant-Appellee.**

Gen. No. 66–16.

Second District.

July 26, 1967.

Rehearing denied September 18, 1967.

Steinberg, Polacek and Steinberg, of Chicago, for appellant.

O'Brien, Burnell, Puckett & Barnett, of Aurora, for appellee.

MR. PRESIDING JUSTICE MORAN delivered the opinion of the court.

On October 16, 1964, plaintiff's decedent was killed in an intersection collision at Route 47 and Plato Road in Kane County. Plaintiff, as Administrator of the Es-

tate of Charles Raymond Maki, Deceased, filed a three-count complaint, basing her cause of action upon the Wrongful Death Act. (Ill Rev Stats 1965, c 70 §§ 1 and 2.) Count three of her complaint did not allege that the plaintiff's decedent was in the exercise of ordinary care for his own safety at the time of the collision in question, but did allege "that at times relevant hereto if there was any negligence on the part of the plaintiff or the plaintiff's decedent it was less than the negligence of the defendant, Calvin Frelk, when compared."

The defendant moved to dismiss count three for failure to state a cause of action because the plaintiff failed to allege due care on behalf of plaintiff's decedent. This motion was allowed and the plaintiff appealed directly to the Supreme Court on the theory that the Illinois rule of contributory negligence was against the Fourteenth Amendment of the United States Constitution and article II, sections 2 and 19 of the Illinois Constitution. Our Supreme Court entered, in part, the following order.

> "In our opinion such a claim (which referred to plaintiff's theory and reasoning) does not give rise to a constitutional question of such a nature as to give this Court jurisdiction on direct appeal. *There remains for consideration the question of whether, as a matter of justice and public policy, the rule should be changed.* On the Court's own motion the cause is transferred to the Appellate Court for the Second District." (Emphasis added.)

The doctrine of contributory negligence as a complete bar to recovery has had a long and varied history. It has been stated in detail by Dean Leon Green in "Illinois Negligence Law," 39 Ill L Rev 36, 116, 197 and 40 Ill L Rev 1. Another review was prepared by Ernest A. Turk, 28 Chi-Kent L Rev 189 and 304.

The doctrine originated in England in 1809 in the case of Butterfield v. Forrester, 11 East 60, 103 Eng Rep 926,

440

wherein the defendant, who was repairing his house, had left a pole projecting across part of the highway and the plaintiff, while riding home at dusk, did not see the pole, rode into it and was thrown from his horse and thereby injured. The court, speaking through Lord Ellenborough, held that:

> "A party is not to cast himself upon an obstruction which has been made by the fault of another, and avail himself of it, if he do not himself use common and ordinary caution to be in the right. In cases of persons riding upon what is considered to be the wrong side of the road, that would not authorise another purposely to ride up against them. One person being in fault will not dispense with another's using ordinary care for himself. Two things must concur to support this action, an obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff."

There has been much speculation as to why the rule found such ready acceptance in later decisions both in England and in the United States. The fact of the matter is that it was during the rise of the Industrial Revolution that the doctrine of contributory negligence developed. There is reason to believe that the courts found in this defense, along with the concepts of duty and proximate cause, a convenient instrument of control by which the liabilities of the rapidly growing industries were curbed and kept within bounds. However, today the great majority of these cases are now heard by an Industrial Commission and negligence of the plaintiff is not an issue. Ill Rev Stats 1965, c 48, §§ 138.1–138.28; Decatur Railway & Light Co. v. Industrial Board of Illinois, 276 Ill 472, 477, 114 NE 915 (1917); Imperial Brass Mfg. Co. v. Industrial Commission, 306 Ill 11, 14, 137 NE 411 (1922).

441

The history of contributory negligence in Illinois is found through a review of Illinois case law. The Illinois Supreme Court in Aurora Branch R. Co. v. Grimes, 13 Ill 585, 587 (1852) followed the Butterfield case and added the requirement that the burden of proof is upon the plaintiff to show not only negligence on the part of the defendant, but also that he exercised proper care and circumspection; or, in other words, that he was not guilty of negligence. In the next few years the decisions involving last clear chance, Moore v. Moss, 14 Ill 106, 110 (1852), degrees of negligence, Chicago & Mississippi R. Co. v. Patchin, 16 Ill 198, 203 (1854), and proximate cause, Joliet & N. I. R. Co. v. Jones, 20 Ill 221, 227 (1858), created a confusing background. In Galena & C. U. R. Co. v. Jacobs, 20 Ill 478 (1858), Justice Breese reviewed these decisions in a case involving a four and one-half-year-old boy who was run over by a railroad locomotive. The court disagreed with the Butterfield case, and adopted a comparative negligence theory in its place. At pages 490–491 the court began with the following fundamental premise:

> "This, and all the cases subsequent, to which we have referred, have one common basis, and that is found in the old law maxim that 'no man shall take advantage of his own wrong or negligence' in his prosecution or defense against another."

The court concluded that liability does not depend absolutely on the absence of all negligence on the part of the plaintiff but upon the relative degrees of care or want of care as manifested by both parties and went on to say at pages 496–497:

> ". . . for all care or negligence is at best but relative, the absence of the highest possible degree of care showing the presence of some negligence, slight as it may be. The true doctrine, therefore, we

442

think is, that in proportion to the negligence of the defendant, should be measured the degree of care required of the plaintiff—that is to say, the more gross the negligence manifested by the defendant, the less degree of care will be required of the plaintiff to enable him to recover. Although these cases do not distinctly avow this doctrine in terms, there is a vein of it very perceptible, running through very many of them, as, where there are faults on both sides, the plaintiff shall recover, his fault being to be measured by the defendant's negligence, the plaintiff need not be wholly without fault. (Citations omitted.) We say, then, that in this, as in all like cases, the degrees of negligence must be measured and considered, and whereever it shall appear that the plaintiff's negligence is comparatively slight, and that of the defendant gross, he shall not be deprived of his action."

Thus, in 1858, Illinois became a state which followed the doctrine of comparative negligence. In 1870, in the case of Illinois Cent. R. Co. v. Baches, 55 Ill 379, 389–390, the court held:

"The seventh of appellee's instructions is not accurate, as it nowhere limits or defines the duty of deceased. Under this instruction, the jury were required to find for the plaintiff, although deceased might have been guilty of negligence equal to that of appellants. Such has never been recognized as the rule of law in this class of cases. This court refused to follow those authorities which hold, that if a plaintiff is guilty of any negligence which contributes to the injury, he could not recover, but announced the rule, that although he might be guilty of negligence, still, if the defendant was guilty of a higher degree of negligence, which, when compared with that of the plaintiff, that of the latter was

greatly disproportioned or slight, he still might recover. But we are not inclined to extend the rule, as there is no warrant in the common law for allowing the plaintiff any greater latitude. He should use prudence and care, but failing to do so, and is guilty of negligence, he can not recover, unless the negligence of the defendant clearly and largely exceeds his. This instruction should have been refused, or modified so as to announce the rule of comparative negligence before it was given."

In 1874, in the case of Illinois Cent. R. Co. v. Hammer, 72 Ill 347, 351, the court, in defining comparative negligence, stated:

"The rule on this subject, it may be, has not at all times been accurately stated by this court. By inadvertence, it has been loosely and indefinitely stated in some of the cases, but what the court has held, and still holds, is, that a plaintiff free from all negligence may recover from a defendant who has failed to use such care as ordinarily prudent men generally employ; or, a plaintiff who is even guilty of slight negligence may recover of a defendant who has been grossly negligent, or whose conduct has been wanton or wilful. Hence the doctrine of comparative negligence."

In 1878, in the case of Indianapolis & St. L. R. Co. v. Evans, 88 Ill 63, 65, the court passed on the following:

"It is the duty of a railroad company to take all reasonable precaution for the protection of life and limb from injuries by their cars; and if such precautions are not taken, a person injured in consequence thereof . . . has a just cause of complaint, and is entitled to recover damages for any injury sustained by reason of the omission of the company to adopt all reasonable guards against liability to

injury, unless such injury is caused by the negligence of the party injured *equal* to or greater than that of the party committing the injury."

and then held:

"This seventh instruction, in substance, says, that plaintiff's action can not be defeated by his own negligence, unless such negligence be at least equal to that of defendant. This is not the law. The true rule on this subject is laid down in Illinois Central Railroad Co. v. Baches, Admr., 55 Ill 379, and need not be further discussed here."

From the principles above set forth developed the doctrine that the negligence of the plaintiff would not bar his recovery if it was "slight," in the sense of a "degree of negligence less than a failure to exercise ordinary care," while the negligence of the defendant was "gross" in comparison, Wabash, St. L. & P. R. Co. v. Moran, 13 Ill App 72, 76 (1883). No attempt was made to divide the damages under this "comparative negligence" rule and, where it was applied, the effect was full recovery by the plaintiff. The injured person was required to show not only that his negligence was slight and that the defendant's negligence was gross, but also that they were so when compared with each other since the element of comparison was the essence of the doctrine, Chicago, M. & St. P. R. Co. v. Mason, 27 Ill App 450, 453, 454 (1888).

During the next 27 years the rule stated by Justice Breese was followed and then later abandoned by the decisions of our Supreme Court in Calumet Iron & Steel Co. v. Martin, 115 Ill 358, 368–369, 3 NE 456 (1885) and City of Lanark v. Dougherty, 153 Ill 163, 165–166, 38 NE 892 (1894), where it unequivocally made any contributory negligence on the part of the plaintiff a complete bar to recovery. Dean Green summarized the reasons for abandonment as being first, the formula was

not complete in that the "degrees of negligence" did not mitigate the damages which the plaintiff could recover; second, the "degrees of negligence" resulted in doctrinal conflict and confusion and third, the Jacobs case had not overruled the Grimes case so that during the lifetime of the Jacobs decision courts of appeal could still rely upon the failure of the plaintiff to prove that he had exercised ordinary care in his own behalf before allowing recovery on a comparative negligence basis.

It is again to be noted that during the 1880's there was a substantial increase in the number of master and servant negligence cases which would have forced a heavier burden on employers if the comparative doctrine remained in effect. It is to be further noted that today, in the latter part of the 20th century, we have a new revolution; a transportation revolution. Injury cases resulting from transportation mishaps clog our court dockets. Negligence is no longer considered in the same category as a crime; anyone can have an accident.

It has also been suggested that, at the time of the adoption of the contributory negligence rule, the Illinois court felt itself somewhat out of step with the prevailing decisions of other states and the views expressed by legal authors of the time.

Following the death and burial of the comparative doctrine of the Jacobs case and the general application of the concept of "degrees of negligence," except in certain instances, the doctrinal concepts of negligence remained static for some time. However, with the industrial, economic and social growth of this state, instance after instance was presented to the courts of appeal and to the legislature where the doctrines of negligence did not satisfy the problems of the changing times. New rules were found by the courts and legislature to avoid the drastic effects of contributory negligence doctrine: witness, the Railway Employers' Liability

446

Act, (Ill Rev Stats 1965, c 114, § 152), Workmen's Compensation Act, (Ill Rev Stats 1965, c 48, § 138.1 et seq.), Workmen's Occupational Diseases Act, (Ill Rev Stats 1965, c 48, § 172.36 et seq.), the Scaffold Act, (Ill Rev Stats 1965, c 48, § 60 et seq.), the development of the willful and wanton misconduct concept and the attractive nuisance doctrine. Similarly, the federal legislation of the Federal Employers' Liability Act, (45 USCA, § 53), and the Merchant Marine Act, (46 USCA, § 688) have made substantial inroads on the comparative negligence doctrine. More recently, because of the controversial rule prohibiting contribution between joint tort-feasors, we have witnessed the development of the concept of indemnification of a "passive" tort-feasor by the "active" tort-feasor.

In the case before us, plaintiff-appellant urges that the public policy of this state should be that plaintiffs who may be "secondarily" or "passively" at fault should be entitled to recover for their own damages just as they are permitted under the active and passive indemnity concept to recover for their liabilities to third parties. The appellant urges that the only equitable and just single rule to be applied to both categories of plaintiffs would be a common-law rule of comparative negligence and damage apportionment.

Defendant-Appellee, on the other hand, urges that there are differences inherent in the circumstances surrounding the respective losses of an indemnity type plaintiff from a contributorily negligent plaintiff so as to justify separate classification for each. Further, that any change from the present rule of contributory negligence to one of comparative negligence should be made by the General Assembly and not by the court. Appellee relies upon Reynolds v. Illinois Bell Telephone Co., 51 Ill App 2d 334, 339, 201 NE2d 322 (1964) in arguing that neither indemnity nor contribution requires the liability to be

447

apportioned according to fault as in comparative negligence and that the right to indemnity does not rest on comparative negligence.

Since the Calumet and Dougherty cases have been decided, there has been considerable erosion in application of the contributory negligence rule in common-law jurisdictions. The United States is virtually the last stronghold of contributory negligence. The last vestige of the complete defense has disappeared from all continental Europe which divides the damages, Great Britain, all of the Canadian Provinces, New Zealand, and Western Australia. See 51 Ill BJ 194 (1962). In the United States in 1953 there were some 40 statutes on the books dealing with various phases of comparative negligence law. One prime example is the Federal Employers' Liability Act, (45 USCA, § 53) which contains the following:

> "In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. . . ."

Most States of the Union which continue to recognize contributory negligence have placed the burden of pleading and proving contributory negligence on the defendant. In seven states a form of comparative negligence has been adopted.

Generally speaking, the currently favorite forms of comparative negligence are the "pure" form represented by the Federal Employers' Liability Act and the Merchant

Marine Act, supra, whereby damages are diminished in proportion to the amount of negligence attributable to the employee. The other is the "modified" approach which has been represented by our sister state of Wisconsin where, by statute, contributory negligence does not bar recovery if such negligence was not as great as the negligence of the defendant but damages allowed shall be diminished in the proportions to the amount of negligence attributable to the person recovering. Theoretically, under the "pure" form, a defendant guilty of 1% of the total negligence is liable for 1% of plaintiff's total damages while under the "modified" form, a plaintiff guilty of 49% of the negligence, as compared with defendant's 51% of the negligence may recover 51% of his damages while, if he were guilty of 50% of the negligence he could recover nothing.

Mississippi and the Canal Zone follow the "pure" comparative negligence approach, whereas Georgia and Arkansas follow the "modified" or "Wisconsin" approach, and various other types of comparative negligence are to be found in Nebraska, South Dakota and Tennessee.

The pros and cons of comparative negligence have been summarized in the report of the committee studying comparative negligence of the Illinois Judicial Conference, 1960. See 51 Ill BJ 194, 197–198 (1962).

The arguments in favor of adopting the comparative negligence rule are first, that the contributory negligence doctrine was historically adopted into the common law to protect the essential growth of the industries, particularly the railroads, and this need is no longer a valid justification for the retention of the defense; second, the doctrine of comparative negligence produces a more just and socially desirable distribution of loss than that achieved by the application of contributory negligence and third, comparative negligence encourages pretrial settlements and jury waivers and will tend to eliminate the need for trial specialists and docket delays.

The argument against comparative negligence can be summarized as follows: first, any harshness of contributory negligence is overcome by compromised verdicts of juries; second, comparative negligence does not encourage settlements because the plaintiff is more likely to recovery something even in doubtful cases and the cost of insurance and defense will thereby increase; third, the art of the trial specialists will be as much in demand under comparative as contributory negligence; and finally, that cases now considered to be of highly questionable liability are more likely to be filed and tried under comparative negligence, thereby creating further congestion in the courts.

In determining the public policy in this state we are not impressed by the arguments pertaining to administrative and procedural problems. Substantive rights are involved in our determination and even, were the more desirable rule to result in increased administrative complications, expense or delay, we would feel it should be adopted and that suitable steps be taken to resolve the resulting procedural problems. Similarly, we are not impressed with the argument that the contributory negligence rule is not as bad as it seems to be because juries have the good sense not to follow it implicitly.

We do feel, however, that our stewardship of the law compels us to reach the conclusion that the party most guilty for the loss suffered should be the one to bear the greater portion of the burden therefor and that the harsh rule of contributory negligence, simple though it may be, should now give way in principle as well as in practice to the more liberal doctrine of recovery in proportion to freedom from fault. This basic concept was recognized a century ago by Justice Breese and has been recognized most recently in the "active" and "passive" indemnification cases.

We recognize that the old view of comparative negligence based upon the quantitative "degrees of negli-

gence" and without apportionment of damages in accordance with the fault does not meet the needs of our present society so we cannot return simply to the common law of Illinois of a century ago, rather, we must adopt a position which meets present day concepts of equality, justice and sensibility. In our judgment, the "modified" doctrine of comparative negligence followed in Wisconsin seems closest to our needs. We believe that the experience in Wisconsin has been largely satisfactory and that the procedural corollaries, particularly the special verdict generally in use in that state, could easily be adopted here.

█ We, accordingly, find that it is and should be the public policy of Illinois that, commencing with the date upon which this decision becomes final, and in this case, contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or an injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering. Properly applied, we feel that this rule will eliminate the need for continued adherence to the fictions of "active-passive" or "primary-secondary" negligence, for actions for contribution or indemnification will fall under the same rule as original actions for the recovery of damage. It will no longer be necessary to justify the difference between "active" and "passive" negligence as "qualitative differences" or "differences in character or kind of wrongs." See Reynolds v. Illinois Bell Telephone Co., supra.

We are not unmindful that the Wisconsin rule has been criticized as being absurd in that a plaintiff almost as negligent as a defendant may recover a substantial portion of his damage but may not recover a cent if both parties are equally negligent.

451

■ It is urged by appellee that the abandonment of the contributory negligence doctrine should be left to the legislature. We are aware of certain decisions supporting this proposition such as Haeg v. Sprague, Warner & Co., 202 Minn 425, 281 NW 261, 263 (1938); Kotler v. Lalley, 112 Conn 86, 151 A 433 (1930). However, the doctrine of contributory negligence was a creature of the courts and having found the doctrine to be unsound and unjust under present conditions the courts have, not only the right, but the duty to abolish the defense. Molitor v. Kaneland Community Unit Dist. No. 302, 18 Ill2d 11, 163 NE2d 89 (1959), where the court states at page 25:

> "The doctrine of school district immunity was created by this Court alone. Having found that doctrine to be unsound and unjust under present conditions, we consider that we have not only the power, but the duty, to abolish that immunity. 'We closed our courtroom doors without legislative help, and we can likewise open them.' "

The doctrine of contributory negligence was created by the courts, not by the legislature. If we have created it, and if it does not meet the needs of present day life, then we are duty bound to abolish it.

In light of present day conditions, we respectfully suggest that, as a matter of justice and public policy, the contributory negligence rule should be changed, and that such rule as established by the cases of Calumet Iron & Steel Co. v. Martin, supra, and City of Lanark v. Dougherty, supra, should be overruled. We likewise suggest that the decision of the Supreme Court in the case of Indianapolis St. L. R. Co. v. Evans, supra, should be reexamined and overruled; and that in lieu of the doctrine of comparative negligence as set forth herein, that the following concept of comparative negligence should be adopted:

"The plaintiff's action can not be defeated by his own negligence, unless such negligence be at least equal to that of defendant; however, plaintiff's damages shall be diminished by the jury in proportion to the amount of negligence attributable to him."

It is not within the province of this court to overrule decisions of the Supreme Court and the foregoing suggestions are made by this court in conformity with its order of transfer directing us to consider, as a matter of justice and public policy, whether the contributory negligence rule should be changed.

We, therefore, conclude that justice requires us to hold that, except as to the plaintiff in this case, the rule herein established shall apply only to cases arising out of future occurrences commencing with the date upon which this decision becomes final. For the reasons stated by the Supreme Court in the Molitor case, the rule shall apply to the plaintiff in the case at bar.

The judgment of the Circuit Court dismissing Count III of the complaint is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

ABRAHAMSON and DAVIS, JJ., concur.