(No. 5602— )

JUD J. REIDY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 11, 1975.*

WILLIAM R. DUNN and WILL GIERACH, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; SAUL R. WEXLER and MARTIN A. SOLL, Assistant Attorneys General, for Respondent.

BURKS, J.

Claimant in this action seeks damages for personal injuries he sustained when he drove his car into an accumulation of water on a State highway, lost control of his vehicle, and struck another automobile coming from the opposite direction.

Claimant contends that his accident was caused by negligence of the Respondent in failing to prevent the accumulation of water at the site of the accident by providing adequate drainage, in failing to provide adequate warning of this dangerous condition of the highway by posting signs or barricades, and in failing to detect the existing hazzard by adequately patrolling the highway.

Coming home from his work in Aurora at about 5:30 p.m. on January 28, 1968, Claimant was driving alone in his Volkswagen in a northeasterly direction on Illinois Route 171, a mile east of Route 83, in Lemont Township of Cook County.

It was dark. The weather was drizzly and raining all that day. The highway was wet. Claimant was familiar with the stretch of road on which his accident occurred, having driven it at least 30 times, but on his way to work earlier that day he had taken the toll road instead. In the 35 minutes he had been driving on his way home, Claimant noticed puddles of water on the highway, but no large accumulations until he struck the water extending several car lengths across the highway and stated in Claimant's brief to be four inches in depth.

Claimant said he was driving about 45 mph; that his windshield wipers were on; that traffic was medium; that he saw the headlights of an approaching car when he struck the water and lost control of his car. Claimant was on the wrong side of this two lane highway when it smashed into the oncoming automobile driven by Frank Kovalis, Respondent's eyewitness to the accident.

Claimant was not wearing his seat belt, and he suffered a broken leg above the knee. He never got out of his car, and did not know the depth of the water. He was in shock when they brought him to the Community Memorial Hospital in La Grange where he remained for eight days. His medical bills were covered by insurance, but he suffered a substantial loss of wages, damages to his car, and a 14 inch scar on his right leg which is weather-sensitive and curtails some of his normal activities.

After a careful reading of all evidence submitted in this case, the Court is still mystified as to how the accumulation of water appeared on the highway at the time and place of the accident, in the absence of any proof of an extreme downpour of rain at that particular location. All witnesses familiar with area testified that there was no evidence of any prior flooding in that area. The evidence is also clear that the State had no prior actual notice of any accumulation of water, although the State Police patrolled the area twice a day.

The first question before us is whether the State had constructive notice of a dangerous condition on its highway and failed to take appropriate measures within a reasonable time to warn users of the highway of such dangerous condition. *Gray v. State, 21 Ill.Ct.Cl. 521; Visco v. State, 21 Ill.Ct.Cl. 480; Dockry v. State, 18 Ill.Ct.Cl. 177.*

The second question, of course, will be whether the Claimant was free from any negligence that contributed to his accident. *Maki v. Frelk, 40 Ill.2d 193; Schuck & Maryland Casualty v. State, 25 Ill.Ct.Cl. 209.*

For answers to the above questions, we will first summarize the testimony of the three witnesses called to testify on behalf of the Claimant other than the Claimant himself and his wife.

Claimant first called Howard Farthing, a State Trooper who was on duty at the time of the accident and who received a call from State Police Headquarters about 20 minutes after the accident. When he arrived at the scene there were three police cars there ahead of him, and there were two wrecked cars, Claimant's Volkswagen and a Plymouth partially in the ditch.

Claimant was sitting in his Volkswagen when Officer Farthing arrived. The people in the other car had already been taken to the hospital. Officer Farthing, by walking in the water on the highway, determined its depth to be four inches and said it was several car lengths covering both sides of the highway.

Officer Farthing radioed headquarters and requested barricades. He then issued a traffic citation to the Claimant for "improper lane usage". Though he said the center line was not visible under the water.

Although he was patrolling a different area that day, Officer Farthing had patrolled the accident site numerous times before; said this particular stretch of road is patrolled at least once every eight or nine hours; that no reports had come in prior to or after he came on duty at 4:00 p.m. as to any flooding condition of the road in this area. He said the road was level in the vicinity of the accident, with no low or high spots, and no curves. He was never aware of any accumulation of water on

the road in this vicinity at any prior time. He said the road was in good repair and the shoulder was grassy.

Claimant then called George Zarins, an employee of the Illinois Division of Highway Communications Center whose duties were to receive and log radio transmissions. He testified that on the night of the accident he received a radio report from the State Police at 6:35 p.m. that barricades were required or requested at the scene of the accident. Zarins also disclosed that he checked the radio logs for an hour or two before the 6:35 p.m. report and determined that no earlier requests for barricades were received, but he didn't check the records for any report beyond that.

Highway Field Engineer Raymond Kristopaitis who next testified on behalf of the Claimant stated that he too examined the State Highway Communications Log for January 29, 1968, and failed to see any actual notification prior to the time of the accident of flooded road conditions or requests for barricades.

Respondent's witness, State Trooper Earl Enders, stated that he was very familiar with the site of this accident, since he patrolled and resided in the area for the past ten years. He confirmed that the police patrolled the area in every eight hour shift, and further stated that, based upon his ten year experience within the area, he had no knowledge of any prior flooding conditions at the scene of this accident. He concluded that the drainage in the area was good. Claimant's witness, Ray Kristopaitis, the Field Engineer for the Division of Highways, had earlier testified that this section of the highway was in good shape, didn't need any repairs, and that no repairs in the roadway were made following the accident.

Frank Kovalis, whose auto was struck by Claimant in the collision, testified that he drove past the accident

site at least once a week and, therefore, was very familiar with the highway. He, too, stated that he never noticed any water accumulation on the road prior to the night of the accident.

We find the evidence to be overwhelming that the State had no knowledge of the flooded highway prior to the accident, and no knowledge of any prior road flooding at or near the scene of the accident.

Claimant argues that circumstantial evidence should support our finding of constructive notice, viz., in the absence of proof of a heavy rainfall, an accumulation of water four inches deep and 80 feet long could not have accumulated suddenly, but must have built up over a period of time, and that, since the State Police patrolled the area twice a day, the condition should have been discovered and reported. The logic of this argument overlooks the possibility, or even the probability, that the water accumulated within a 12 hour period since the area was last patrolled.

Claimant testified that there was a "medium" amount of traffic on this highway at the time of his accident, and the evidence shows that there had been no other accident in this vicinity. Apparently all other drivers noticed the water, reduced their speed, and kept their cars under control while passing through it. This includes the only eyewitness to the accident other than the Claimant himself. Frank Kovalis, whose car was struck by the Claimant, had no difficulty in keeping his Plymouth under control and staying in his own traffic lane. None of the other motorists who drove through the water apparently considered it sufficiently hazardous to report it to the police.

The Secretary of State's booklet, *Rules of the Road,* states at page 28:

"Regardless of the limits which may be posted, the law also provides that no person shall drive at a speed which is greater than is reasonable and proper with regard to traffic conditions and the use of the highway, or which endangers the safety of any person or property."

The evidence in this case draws us inexorably to the conclusion that the probable cause of Claimant's accident was his failure to use ordinary care for his own safety on this particular occasion.

Claimant's headlights should have picked up a body of water 80 feet long before he entered it. The highway was straight and level for a long distance before he approached the water. There was nothing but rain to obstruct Claimant's vision. He entered the water at a speed of 45 miles per hour, well below the speed limit, but a speed that was apparently unsafe and excessive under the conditions prevailing.

Claimant admitted that "he lost control of his car" when he hit the water. In *Schuck & Maryland Casualty Co. v. State of Illinois, 25 Ill.Ct.Cl. 209,* this Court denied Claimants' recovery based upon an accident allegedly due to the failure of the State to maintain a frontage road. Noting that "it is the duty of a driver to keep his vehicle under control," we found, as we do in the case at bar, that the Claimant "has shown no hazardous or dangerous condition of which the State had either actual or constructive notice. There have apparently been no accidents or complaints in regard to this portion of the highway . . . ."

The duty of the State to motorists using public highways is to exercise ordinary care to keep them reasonably safe for such use. *Rains v. State of Illinois, 25 Ill.Ct.Cl. 330.* In the instant cause we find that the State has not failed in this duty, since it had no notice, actual or constructive, of any flooding of the highway. Moreover, we find that Claimant failed to prove that he was free from contributory negligence at the time of the

accident. Any finding of liability against the Respondent under these circumstances would be tantamount to declaring the State to be an insurer against all accidents which occur on its highways. That would be contrary to our rulings followed in many previous claims of this kind. *Beenes v. State of Illinois, 21 Ill.Ct.Cl. 83; Hook v. State of Illinois, 22 Ill.Ct.Cl. 629; Gray v. State of Illinois, 21 Ill.Ct.Cl. 521; Link v. State of Illinois 24 Ill.Ct.Cl. 69; Vesci v. State of Illinois 24 Ill.Ct.Cl. 23.*

This claim must be and is hereby denied.